JEREMIAH H. TRIGGS vs. J. BLACKBURN JONES, impleaded, etc.

June 8, 1891.

**Wrongful Delivery of Deed by Agent—Action to Cancel—Recovery of Damages.**—The plaintiff alleged that he intrusted to defendant J. a deed to defendant C., with instructions to deliver it only upon fulfilment of certain conditions; that J. delivered it wrongfully, and contrary to the instructions; that C. subsequently conveyed to defendant G., who had notice of the foregoing facts. The relief prayed for was that the deeds be cancelled, and that G. be compelled to reconvey, and for other and further relief. J. appeared and answered. The court refused to grant any relief against G., on the ground that he was an innocent purchaser for value, and that plaintiff had negligently delayed, after knowledge of the fact, to disaffirm the act of J. in delivering the deed, but gave judgment against J. for damages. *Held*, that this relief was "consistent with the case made by the complaint, and was embraced within the issue."

**Same—Measure of Damages against Agent.**—*Also*, that the proper measure of damages against J. was the value of the property at the date of the delivery of the deed, with interest from that date to the time of the trial.

**Same—Legal Title Sufficient to Sustain Action.**—The entire legal title being in the plaintiff, he could maintain the action in his own name, although other parties had some equitable interest in the property with him.

**Objection to Evidence — Effect of Specifying Reasons.**—Where evidence is objected to as incompetent for certain specified reasons, the objection is to be deemed limited to the grounds specified, and will not cover others not specified.

**Principal and Agent—Ratification—Agent's Liability.**—While the rule is that, by a ratification of an unauthorized act, the principal absolves the agent from all responsibility for loss or damage growing out of the unauthorized transaction, yet mere passive inaction or silence after knowledge of the fact, which might amount, in favor of third parties, to an implied ratification of the unauthorized act, would not necessarily amount to ratification in favor of the agent, so as to absolve him from liability to his principal.

**Same—Acts not Amounting to Ratification.**—A mere effort on part of the principal, after knowledge of the unauthorized act of the agent, to avoid loss thereby, will not amount to a ratification, so as to relieve the agent from liability.

Appeal by defendant Jones (impleaded with Wm. O. Cook and wife and Milton George) from an order of the district court for St. Louis county, refusing a new trial after a trial by *Ensign*, J., and judgment for $15,000, with interest from August 8, 1887, ordered against appellant.

*Tear & Davies* and *Flandrau, Squires & Cutcheon*, for appellant.
*White, Reynolds & Schmidt*, for respondent.

MITCHELL, J. The defendant Cook, having a patent for an improved frog or "car-replacer," had contracted to sell to defendant Jones a half-interest in it for $75,000, with an understanding that Jones, who seems to have been engaged as a "promoter" of such enterprises, would procure others to purchase portions of his half-interest, and then, when paid for, stock the whole thing by forming a corporation to which the patent should be conveyed, each party taking stock in proportion to his interest, Cook taking half of the stock for his remaining half of the patent. At Chicago, about the 30th of July, 1887, Jones having interested plaintiff in the scheme, the two entered into an agreement by which plaintiff was to purchase of Jones a fifth of his half-interest, to be paid for in certain real estate in Duluth, of the estimated value of $15,000. There is a conflict in the evidence as to whether the details of this bargain were agreed on between plaintiff and Cook or between plaintiff and Jones. This is not perhaps very material, but, if it was, there is ample evidence to support the finding of the court that plaintiff made the agreement with Jones, although the deed was to run to Cook, and that, in consideration of it, plaintiff was to have a proportionate share of the stock of the corporation when organized and its stock issued. At Duluth, on August 1, 1887, plaintiff signed and acknowledged a deed of the property in question, but left the grantee's name blank, because he had forgotten Cook's name, and sent it by mail to Jones in Chicago. On receipt of the deed, Jones immediately inserted the name of Cook as

grantee, and delivered the deed to him, and received credit therefor as so much paid on the $75,000 which he owed Cook. Cook placed the deed on record August 27th, and on December 24th following mortgaged the land to defendant George for $15,000, and on November 16, 1888, conveyed it to George in payment of the mortgage. Although subsequently a corporation was formally organized, yet no stock was ever issued, and plaintiff never received anything for his property; the whole scheme having failed and fallen through, either because Cook's patent was, as was claimed, an infringement, or because, as is conceded, Jones never paid the $75,000 to Cook. So far there is practically no substantial disagreement as to the material facts. In March, 1889, plaintiff brought this action, alleging, in addition to the foregoing facts, that when he sent the deed to Jones by mail he sent accompanying it a letter, authorizing Jones to insert Cook's name as grantee, but instructing him to hold the deed in escrow until the contemplated corporation was completed, and the stock issued and delivered; but that Jones, without authority and contrary to these instructions, delivered the deed; and that both Cook and George received their conveyances with full knowledge of these facts, and without paying any consideration therefor. The relief asked was that these deeds be declared void and cancelled, and that George be required to reconvey to plaintiff, and for such other and further relief as might be just and equitable. Jones answered separately, putting in issue the allegation of the complaint that the deed was sent to him to be held in escrow, or for any other purpose than to be delivered to Cook on demand. Upon the trial the court found the facts against Jones substantially as alleged in the complaint, but found that George was an innocent purchaser for value, and for that reason, and because of plaintiff's neglect and delay, after knowledge of the fact, seasonably to disaffirm the act of Jones in delivering the deed, refused to grant plaintiff any relief as against George, but ordered a money judgment for $15,000 and interest against Jones.

The point is made that the court had no right, under the complaint in this action, to render a money judgment against Jones. But this was clearly authorized by Gen. St. 1878, c. 66, § 267. The only

cause of action which plaintiff had against Jones, and the only judgment he could recover against him, was for damages for the wrongful delivery of the deed.   He might have maintained such an action against him without attempting to recover the land from George; and having brought an action against all the parties, if he failed to recover back his land, because it had passed into the hands of an innocent purchaser, there was no reason why he might not recover his damages against Jones.   The complaint stated every fact necessary to constitute such a cause of action, and the relief granted was "consistent with the case made by the complaint" and was "embraced within the issue."   The fact that such relief was not specifically prayed for is not material.

The important, and indeed the pivotal, question of fact in the case was whether the deed from plaintiff was placed with Jones in escrow only, to be delivered on the fulfilment of the conditions already referred to.   To maintain the allegations of his complaint in that regard, the plaintiff was allowed to introduce in evidence a letter-press copy of the letter which he claimed to have sent to Jones, accompanying the deed.   This is urged as error, on the ground that no foundation was laid for the introduction of secondary evidence.   The objection to its admission made on the trial was that it was "irrelevant, immaterial, and incompetent, *it being an attempt to modify the express terms of the deed, and there is no proof that the letter was sent to Jones.*"   The general objection of incompetency, if unlimited, might have been sufficient to raise the objection that the copy of the letter was secondary evidence; but the defendant, having proceeded to specify wherein and why it was incompetent, must be deemed to have intended to limit his objection to the grounds specified, and neither of these covers the point that the evidence was only secondary.   The objection was overruled, and the evidence admitted, with the understanding that it should be followed by evidence that the letter was sent to Jones; and the further point is now made that no such proof was made.   It appeared from the testimony of the plaintiff, and of his stenographer, who made the copy and who attended to mailing letters, that the letter was written to be sent with the deed, (as its contents show,) that the two were together, and "went off together,"

and that the deed was received by Jones in due course of mail. This was certainly some evidence tending to prove that the letter was mailed, although neither of the witnesses swear to putting it in an envelope or depositing it in the post-office. This is strongly corroborated by the fact that the letter contains the authority to Jones to insert Cook's name in the deed as grantee. If, as he swears, no letter accompanied the deed, he must, so far as appears, have inserted the name of Cook without authority; for the prior understanding that plaintiff was to execute the deed to Cook would give Jones no authority to fill blanks. We are therefore of opinion that the evidence was sufficient to justify the court in concluding that this letter of instructions from plaintiff to Jones accompanied the deed; and, this being so, it can hardly admit of doubt but that the evidence was sufficient to justify the finding that Jones wrongfully delivered the deed, without the fulfilment of the conditions upon which it was intrusted to him, and that as a consequence plaintiff lost his land. This made out a case entitling plaintiff to recover damages of Jones.

A point is made that the court erred in awarding plaintiff $15,000, inasmuch, as is claimed, the evidence shows that Cook only took the land for $14,000, and that Jones himself paid another $1,000 in cash, to make up the amount to $15,000. The evidence on this point is conflicting. But it is wholly immaterial what Cook agreed with Jones to take the property for. What plaintiff is entitled to recover is what he lost; and what he lost was his land, the value of which, at that time, the court finds was $15,000. The court was also right in allowing interest on this amount from the date when the plaintiff was wrongfully deprived of his property—that is, from the date of the delivery of the deed—up to the date of the trial. This is as necessary a part of a complete indemnity for the injury done to plaintiff, as is the value itself at the time he was wrongfully deprived of his property. In trespass, trover, and like actions, where personal property has been wrongfully taken and converted or wrongfully destroyed, and the owner is entitled to recover, and must accept the value in place of the property itself, it is now well settled that interest, as part of the damages, should be allowed on the value of the property from the date of the wrongful conversion or destruc-

tion, or whatever time, by defendant's fault, the loss occurred. 1 Suth. Dam. pp. 173, 174; 2 Sedg. Dam. p. 186n. There is no reason why the same rule should not be applied in a case like the present.

It appeared from the evidence that, although the title to this land was wholly in plaintiff, yet in fact two parties, named Quayle and Pearson, had some interest in it with plaintiff, and for this reason it is urged that the court should have dismissed the case when plaintiff's evidence closed. There is nothing in this point. Plaintiff, as the owner of the legal title, had a right to maintain the action in his own name, whether he held that title solely in his own right, or for himself and also as trustee for others. A judgment in the case would fully protect defendant from another suit. *Anderson v. Reardon, supra,* p. 185. Moreover, it was stipulated on the trial that the interest of Quayle and Pearson was covered by the title of plaintiff, and that the counsel for the plaintiff had authority to represent them.

The remaining, and really the only important, question in the case is as to the alleged ratification by plaintiff of the act of Jones in delivering the deed. It is claimed that, after knowledge of the facts, plaintiff ratified Jones's act, and that such ratification operated the same as original authority, and absolved Jones from all liability, even if the delivery of the deed was unauthorized when made. The court finds that Jones immediately informed plaintiff (by letter dated August 8, 1887) that he had delivered the deed to Cook, and that plaintiff did not at once repudiate the act, and never prior to the commencement of this action notified Cook that he repudiated, but left the deed in the possession of Cook, and joined with Jones in taking the preliminary steps in the formation of the contemplated corporation, in which it had been agreed that plaintiff was to receive stock as already stated. It was because of this delay to promptly repudiate the act of Jones that the court refused to grant plaintiff relief against defendant George, who was an innocent purchaser. But while the facts found may be evidence of a ratification, they do not, as a matter of law, amount to that, at least in favor of Jones, the party who committed the unauthorized act. It is, however, assigned as error that the court failed to find that plaintiff had ratified the de-

livery of the deed. It is impracticable to state, or even discuss, the evidence at length. A careful perusal of it satisfies us that, while plaintiff was informed by letter as early as August, 1887, that the deed had been delivered, yet this information was accompanied and frequently followed by statements and assurances from Jones to the effect that the original arrangement was being or would be carried out, so that he would get his stock as had been agreed, and that Cook would return the deed or reconvey the property if he (plaintiff) desired, etc., which were calculated to keep plaintiff quiet, and allay any possible fears on his part; and that, influenced and induced by these considerations, he made no express repudiation of Jones's act, but let matters rest, hoping and expecting that the deal would still be consummated according to agreement, and he get the stock to which he would be entitled; and that with this hope and expectation, and at the instance of Jones, in whom he seemed still to have implicit confidence, he sent a proxy to one Mahle, authorizing him to subscribe for stock in his name, and to vote it for officers of the company at the meeting for organization; but that finally, having discovered that the whole scheme had fallen through, and would never be consummated, he brought this action to recover either the land or damages. At least, the evidence is such that it would have justified the court in taking this view of the facts.

There is no doubt that the general rule is that, by a ratification of an unauthorized act, the principal absolves the agent from all responsibility for loss or damage growing out of the unauthorized transaction, and that thenceforward the principal assumes the responsibility of the transaction, with all its advantages and all its burdens. Neither is there any question but that, where the rights and obligations of third persons may depend on his election, the principal is bound to act, and give notice of his repudiation or disaffirmance of the unauthorized act at once, or at least within a reasonable time after knowledge of the act; and, if he does not so dissent, his silence will afford conclusive evidence of his approval. Such a rule is necessary to protect the rights of third parties who have dealt with the agent. If the principal, after knowledge, remains entirely passive, it is but just, when the protection of third

parties requires it, to presume that what, upon knowledge, he has failed to repudiate, he has tacitly confirmed. But it is apparent that the reasons for such a rule do not apply with equal force in favor of the agent himself, who has wrongfully committed the unauthorized act. Consequently mere passive inaction or silence, which would amount to an implied ratification in favor of third parties, might not amount to that in favor of the agent, so as to absolve him from liability to his principal for loss or damage resulting from the unauthorized act, especially if such inaction or failure to immediately disaffirm was induced by the assurances or persuasion of the agent himself. Nor in this case does the affirmative action of the plaintiff, after knowledge of the delivery of the deed, in taking part in the preliminary steps for the organization of the contemplated stock company, of itself amount to a ratification of the unauthorized act. Such steps were right in the line of the original agreement between the parties, and were designed to carry it into effect. Induced, as such action probably was, by the assurances of Jones that the enterprise would still go on, and plaintiff get his stock, it really amounted to nothing more than an effort on plaintiff's part, after knowledge of Jones's deviation from his instructions, to avoid loss thereby, which is not such a ratification as will relieve the agent. Mechem, Agency, § 173. Upon proof that Jones's act was without original authority, the burden was upon him to show such a subsequent ratification as would relieve him from liability. The court has not found any such ratification, and, in our opinion, under the evidence, he was justified in finding, as he in effect does, that there was none.

Order affirmed.