(18 Misc. Rep. 450.)

### KETCHEM v. MARSLAND.

(Supreme Court, Appellate Term, First Department. November 25, 1896.)

1. PARENT AND CHILD—DENTAL SERVICES—LIABILITY OF PARENT FOR.
   A person with whom an infant is temporarily residing cannot pledge the parent's credit for a dentist's services in filling and regulating the infant's

teeth, since such services are not required by any immediate necessity, and should be contracted for by the parent.

2. PRINCIPAL AND AGENT—RATIFICATION OF UNAUTHORIZED ACTS.

A principal is bound by his agent's unauthorized act, where he neglects to disavow it for over three years after notice of a claim founded thereon.

Appeal from Eighth district court.

Action by Theodore V. Ketchem against Frank E. Marsland for the value of plaintiff's services as a dentist, rendered to defendant's infant daughter at the request of another who was intrusted with the temporary custody of the infant. There was a judgment in favor of plaintiff, and defendant appeals. Affirmed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

William A. Abbott, for appellant.

Samuel Scoville, for respondent.

BISCHOFF, J. The action is for the fair and reasonable value of services rendered by the plaintiff, as a dentist, in filling and regulating the position of the teeth of the defendant's infant daughter while she was temporarily residing apart from her parents, with their assent, during the summer of the year 1892, in the care of one Mrs. Beecher, at whose direct request this dental service was alleged to have been performed.

As to the rendition and value of the services, the evidence, although in conflict, fairly supports the recovery; and the main inquiry must be with regard to the defendant's liability, as principal, for Mrs. Beecher's act in contracting the indebtedness, under the circumstances. Mrs. Beecher was not a general agent of the defendant in the matters pertaining to the maintenance of his child. She was a temporary custodian only, and, while her duties imported an agency to pledge the defendant's credit for the relief of sudden and urgent necessity, that agency did not extend to the requirement of such services as these in suit, since, as appears, they were not absolutely called for at the particular time, and were of a nature such as the parent, not the temporary custodian, was to contract for, if found to be desirable. There was evidence—the testimony of the child—showing the actual service performed to have been the extracting of a tooth in relief of a toothache; but, while such service would naturally have been reasonably within Mrs. Beecher's agency to require, the plaintiff makes no claim for it, and denies any recollection of the circumstances such as thus testified to.

That Mrs. Beecher had implied power to charge the defendant upon contracts for services rendered in relief of the child's necessity, while she may have exceeded this power with regard to the actual services in suit, is clear, from a consideration of the obligations arising from the relation of parent and child; and such is the expression of authority. "A parent is under a natural obligation to furnish necessaries for his infant children; and, if the parent neglects that duty, any other person who supplies such necessaries is deemed to have conferred a benefit on the delinquent parent, for which the law raises an implied promise to pay on the part of the

parent." Van Valkinburgh v. Watson, 13 Johns. 480. Of course, the assumption to supply in reliance upon the parent's credit is justified within close limits. As per Gould, J.: "No man shall take upon him to dictate to a parent what clothing the child shall wear, at what time they shall be purchased, or of whom. All that must be left to the discretion of the father or mother." For such necessaries as the parents should provide, but of which the incidents to the provision are within rightful parental discretion, there must be a clear and palpable omission of duty in the matter of the provision upon the parent's part in order to authorize any other person to act for and charge the expense to the parent. Van Valkinburgh v. Watson, supra. Necessaries with which another may supply the minor child, upon the faith of another's implied or apparent authority to pledge the parent's credit therefor, must be such services or such commodities as of which the child stands in immediate need, under circumstances rendering the previous assent of the parent unreasonable or inexpedient to seek. In such a case, the person procuring the supply is the agent of the parent ex necessitate. Story, Ag. § 142; Clark, Cont. 715; 1 Am. & Eng. Enc. Law (2d Ed.) 948, note 4; Bergh v. Warner (Minn.) 50 N. W. 77. Conceding, then, that Mrs. Beecher's act in requesting the plaintiff to perform the services in suit was in excess of her implied powers, yet, having the care of the child, she had some powers, as agent, to bind the defendant for actual necessaries; and, with this in mind, we proceed to the further question in the case, that of the defendant's ratification of this originally unauthorized act.

At the beginning of the year 1893 the plaintiff sent a bill to the defendant for these services, and received no answer, either in approval or dissent; and, during the ensuing three years, or more, up to the time of the commencement of this action, several communications of his to the defendant, with regard to his claim, met with no better response. Was not a ratification to be inferred from such silence? Clearly, the answer must be in the affirmative. Mrs. Beecher was not a mere intermeddler, without shadow of right to bind the defendant, such as might have justified his ignoring a claim based upon her assumed agency in his behalf. She had been accorded the care and custody of his child, with certain implied duties to perform for the infant's well-being; and the procuring of certain necessaries, should circumstances require, was one of these duties. Granted that the services performed by the plaintiff were not such as the defendant became liable for, in the first instance, through the agent's act merely, yet this was because the agent, being authorized to contract for some services, was not authorized as to these. She exceeded her actual powers, while clothed with some, and, but for the principal's subsequent assent, express or implied, he would not have been bound. Under the circumstances of the case, the defendant's subsequent assent appeared from his failure to dissent during this extensive period succeeding his knowledge of the facts. He was bound to disavow Mrs. Beecher's act within a reasonable time after notice (1 Am. & Eng. Enc. Law [2d Ed.] 1203, and cases collated in note 2); and whether or not his delay was

unreasonable was a question of fact (Id. 1205). "Where an agency actually exists, the mere acquiescence of the principal may well give rise to the presumption of an intentional ratification of the act." Story, Ag. § 256. "Where the relation of principal and agent does in fact exist, although in the particular transaction the agent has exceeded his authority, an intention to ratify will always be presumed from the silence of the principal who has received a letter informing him what has been done on his account." 1 Liverm. Ag. 50. The author last quoted does not incline to the view that a ratification should be implied from a party's silence after notice of an act done on his account by a stranger who has totally assumed the agency, but adjudications are not wanting in support of it. "To say that silence is no evidence of it [ratification] is to say that there can be no implied ratification of an unauthorized act, or, at least, to tie up the possibility of ratification to the accident of prior relations. Neither reason nor authority justifies such a conclusion. A man who sees what has been done in his name and for his benefit, even by an intermeddler, has the same power to ratify and confirm it that he would have to make a similar contract for himself; and, if the power to ratify be conceded to him, the fact of ratification must be provable by the ordinary means." Railroad Co. v. Cowell, 28 Pa. St. 329. "Whether silence operates as presumptive proof of ratification of the act of a mere volunteer must depend upon the particular circumstances of the case. If these circumstances are such that the inaction or silence of the party sought to be charged as principal would be likely to cause injury to the person giving credit to and relying upon such assumed agency, or to induce him to believe that such agency did in fact exist, and to act upon such belief to his detriment, then such silence or inaction may be considered as a ratification of the agency." Heyn v. O'Hagen, 60 Mich. 157, 26 N. W. 863. See, also, Saveland v. Green, 40 Wis. 438; Triggs v. Jones, 46 Minn. 277, 48 N. W. 1113; Kelly v. Phelps, 57 Wis. 425, 15 N. W. 385. The rule as evolved by the adjudications is stated to be (1 Am. & Eng. Enc. Law [2d Ed.] 1209) that, "although the relation of the parties as principal and agent is an important consideration, yet, in the case of a mere stranger or volunteer, the silence of the alleged principal, when fully informed of the unauthorized act, is evidence of a ratification, though far less strong,"— citing Union Gold Min. Co. v. Rocky Mountain Nat. Bank, 2 Colo. 248; Foster v. Rockwell, 104 Mass. 172; Harrod v. McDaniels, 126 Mass. 415; Ladd v. Hildebrant, 27 Wis. 135.

In the case at bar we are not required to go so far as to decide that one may become bound, upon a failure to disavow within a reasonable time, for the act of a mere volunteer, assumed to be done in the former's name, since here the ratification attaches to an existing agency which had been exceeded, and the reason upon which the rule as to implied ratification is founded may readily be found existent in this case.

Judgment affirmed, with costs. All concur.