[Civ. No. 11109. First Appellate District, Division One.—October 11, 1940.]·

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Appellant, v. E. F. PERRY et al., Defendants; CHARLES A. WAYLAND, Respondent.

134

Keyes & Erskine and Rea, Free & Jacka for Appellant.

Ackerman, Wayland & Mathews and Keesling, Wayland & Eliot for Respondent.

PETERS, P. J.—Plaintiff, Bank of America National Trust and Savings Association, appeals from a judgment for defendant, Charles A. Wayland, rendered in an action brought against Dr. Wayland as endorser of a promissory note. Plaintiff sues as successor of the Bank of San Jose to whom the note was originally endorsed and delivered. Judgment in favor of the defendants, E. F. Perry and the estate of Lucy M. Wayland, was previously entered and has long since become final on the ground that as to them the note was barred by the statute of limitations. Defendant Rucker was deceased and no personal representative was appointed for his estate, he apparently having died a bankrupt.

■ This appeal presents a situation where, since the two main participants in the transaction—Rucker and Mrs. Wayland—were dead at the time of the trial, the basic facts depended, to a large extent, on inferences and circumstantial evidence. The evidence, which was largely uncontradicted, is capable of two interpretations, each equally reasonable. Findings in favor of either party would find ample support in the record. Under such circumstances, the case is one resting entirely and peculiarly within the discretion of the trial court.

The promissory note in question was secured by a deed of trust on some Fresno property, was executed on November 2, 1922, by E. F. Perry as maker, was in the sum of $12,000, became due two years from date, and was payable to the order of Charles A. Wayland, Lucy M. Wayland (his wife) and Jos. H. Rucker. On the date the note was executed it was transferred for value to the Bank of San Jose by an endorsement which reads as follows:

"Presentation and demand, protest and notice of non-payment waived, and the within obligations guaranteed, for value received.

"CHARLES A. WAYLAND,
"By LUCY M. WAYLAND, his Atty. in fact,
"LUCY M. WAYLAND
"JOS. H. RUCKER."

Admittedly, Rucker and Mrs. Wayland (who was Rucker's sister) personally signed the note, and Mrs. Wayland also signed for her husband, purportedly acting under a general power of attorney which conferred upon her authority to do acts for her husband's use and benefit. This power of attorney was delivered to the bank on the date the note was transferred to it, and remained in its possession thereafter. The trial court found that neither Doctor nor Mrs. Wayland received any part of the proceeds of the note, and that the transaction was without the knowledge or consent of Dr. Wayland, who did not learn of it until early in 1928. The trial court also found that, when the loan was made, the bank knew that it was for the sole use and benefit of Rucker. ■ Appellant's first major contention is that the evidence, as a matter of law, is insufficient to support this last mentioned finding. This finding is decisive of this phase of the case because the rule is well-settled that a general power of attor-

ney to do acts for the use and benefit of the person conferring the power (such as the power of attorney here involved) does not confer the power on the donee to do acts for the benefit of the donee or for the benefit of a third person. Many cases are cited by respondent to support this rule. These cases, and the rule therein stated, are not challenged by appellant. It concedes that the power of attorney here involved did not confer on Mrs. Wayland the power to execute or endorse, in the name of Dr. Wayland, commercial paper for the accommodation of Mrs. Wayland or of Rucker, provided the bank knew or should have known that the endorsement was not for the benefit of Dr. Wayland. Notice is the important element.

The evidence shows that Dr. Wayland had given his wife the power of attorney in 1918, upon his departure from San Jose after enlistment for service in the World War. There was no evidence that the power had ever been exercised except in the transaction here involved. Rucker was a large scale real estate operator with offices in San Francisco and San Jose. He did a large portion of his banking business with the Bank of San Jose. Mr. Victor J. La Motte, vice-president and general manager of the bank at the time of the transaction here involved, testified that Rucker obtained a great many loans from the bank. The Waylands did their banking with another bank. Rucker carried on real estate operations on his own behalf as well as in the capacity of a broker for others.

The exact circumstances surrounding the execution of the note do not appear in the record. The Fresno property which secured the note had been owned by Dr. and Mrs. Wayland. On October 28, 1922, the Waylands traded it and another parcel in San Jose for an apartment house in San Francisco, Rucker acting as broker for the Waylands. Dr. Wayland testified that he understood that Rucker was acting as a broker in this exchange, and that it was no part of his understanding with Rucker that the $12,000 note of November 2, 1922, should be executed as a part of the exchange transaction.

From the facts in possession of the bank it may be inferred that the bank knew that Miss Perry, the maker of the note and deed of trust, was merely a dummy for Rucker. La Motte testified that he knew that Miss Perry was a mere

clerical employee in Rucker's office, and that it was the custom to place title to property in the name of an employee; that the Fresno property, the security for the note, was not appraised, nor was any investigation made of the credit of the Waylands or of Perry; and that he had no knowledge of who received the proceeds of the note. However, the records of the bank disclose that on November 3, 1922, a draft was issued to Joseph H. Rucker & Co. in the sum of $11,965.60. This draft was never explained by the bank, but it is a reasonable inference that it was the proceeds of the $12,000 note, less the usual expenses.

Miss Perry testified that she held title to the Fresno property and executed the note and deed of trust as the representative of Rucker, and that Rucker received the proceeds of the note and disbursed them for his own use and benefit.

From the above testimony the trial court could reasonably infer that the bank made the advance on the credit of Rucker, and that the bank knew when it made the advance that Rucker was to get, and did get, the proceeds. This alone is sufficient to support the challenged finding.

In addition, there is evidence to support the finding that after the advance was made, the bank, for many years, treated Rucker as the party primarily liable. The ledger card of the bank showing payments made on the note was entitled:

> "Original Maker Perry, E. F.
> Loan No. 687.
> Endorsed by: Chas. A. Wayland, Lucy M. Wayland and Jos. H. Rucker."

The appellant's witnesses testified that no notice of interest payments was ever sent to Dr. and Mrs. Wayland. While it is true that the bank officials testified that notices were customarily only sent to the maker and not to the endorsers, Miss Perry testified that she never received the notices personally; that the notices were received by Mr. Rucker; that Rucker instructed her to make the interest payments, which she did with a Rucker check; that she had never personally received any communication from the bank regarding the note. Reading Miss Perry's testimony as a whole, including her cross-examination, it appears from her testimony that the finding that after the loan was made, the bank

dealt exclusively with Rucker, is amply supported by the record. While it is true, as urged by appellant, that evidence that the bank knew after the loan was made that Rucker was the person primarily liable, is not direct evidence that the bank knew this fact at the time the loan was made, it is a circumstance that the trial court could, and did, weigh, together with other circumstances, in ascertaining that fact. It is a reasonable, although not inevitable, inference from such facts that the bank had such knowledge at the time the loan was made.

■ It is true that La Motte testified that he did not know that the Wayland endorsements were for the accommodation of Rucker, and that he did not know what was going to happen to the proceeds at the time the note was endorsed. Appellant contends that if La Motte did know that the proceeds of the note were for Rucker's use, the bank was guilty of a fraud upon Dr. Wayland in procuring Mrs. Wayland to endorse the note on behalf of her husband for the accommodation of Rucker, which was beyond the authority given her by the power of attorney. The bank contends that, unless it was guilty of a "down-right fraud" on Dr. Wayland, the judgment cannot stand, and that the presumption against wrongdoing and fraud supports its position. We believe the evidence supports the finding that La Motte knew the Wayland endorsements were for the accommodation of Rucker, but this does not mean that La Motte was guilty of active fraud. It is a far more reasonable inference that La Motte, seeing the broad authority conferred by the power of attorney, failed to appreciate that it was confined to acts for the use and benefit of Dr. Wayland, and deemed it amply sufficient to authorize Mrs. Wayland to endorse any note, including the note here involved.

Appellant contends that La Motte is a "disinterested" witness, and seems to argue that for that reason, in the appellate court, his testimony is entitled to more weight than that of an interested witness. It is true that La Motte left the employ of the Bank of San Jose in 1926 or 1927, and that at the time of trial was employed by another bank not connected with appellant. In that sense he had no interest in the case. But, since it was he who acted on behalf of the bank in the transaction, and any misunderstanding of the scope of the power of attorney or failure to exercise due care was his, it

can scarcely be contended that he was a disinterested witness. ■ At any rate, the weight to be given to the presumption, and to La Motte's testimony, was a matter solely and exclusively for the trial court.

The next contention of appellant is that, even though Mrs. Wayland exceeded her authority in endorsing the note, Dr. Wayland subsequently ratified her unauthorized act by executing a waiver of the statute of limitations in 1928. The circumstances surrounding the execution of the waiver were these: Interest payments on the note were paid by Rucker until early in 1928. Upon Rucker's default, Mr. Frank C. Mitchell, the then vice-president and manager of the San Jose branch of appellant, wrote to Dr. Wayland requesting him to call at the bank. At this time Dr. Wayland first learned of the transaction. He told Mitchell that he did not feel "legally or morally responsible" for the note. Thereafter, Rucker made several more interest payments. On October 30, 1928 (the statute of limitations would have run on November 2, 1928), at the request of Mitchell, Dr. Wayland signed a waiver of the statute of limitations. The waiver reads, in part, as follows:

"FOR A VALUABLE CONSIDERATION, I hereby agree that I, as endorser and as a guarantor, will not set up or claim any benefit by reason of the statutes of limitations in defense to any action brought by the owner and holder of that certain promissory note in words and figures, as follows: [here follows copy of note] and I hereby expressly waive any and all rights which may hereafter accrue to me under the statute of limitations or otherwise.

"Dated: October 30, 1928.

CHARLES A. WAYLAND."

The trial court found that Dr. Wayland, for a valuable consideration, executed the waiver of the statute, but that Dr. Wayland did not thereby intend to, nor did he, in fact, ratify the acts of his wife, nor did he thereby intend, nor did he, in fact, acknowledge the loan as his obligation or agree to pay it.

The appellant contends that if respondent's conduct expressed ratification to the bank, what he may have secretly intended is immaterial. The appellant notes statements in cases discussing the law of ratification that ratification is more often implied from conduct than from expressed words.

■ The appellant also finds sound authority for the proposition that it is the duty of the principal to repudiate the act as soon as he is fully informed of what has been done in his name by the purported agent without authority, with the result that passivity and silence may be construed as a ratification. There can be no doubt of the soundness of these cases. ■ Any act consistent only with recognition of the binding force of the unauthorized act would constitute a ratification. ■ We have no doubt that, if a principal, with full knowledge of the facts, without qualification, executes a waiver of the statute of limitations, that a third person, such as appellant, would be entitled to rely on his act as a recognition of the binding force of the obligation. ■ But in this case the evidence most favorable to respondent shows that the waiver was not signed by Dr. Wayland at a time that he had full knowledge of the facts. On the contrary it is a reasonable inference from the evidence that Dr. Wayland signed the waiver in the mistaken belief, induced by Mr. Mitchell of the bank, that he was legally liable on the endorsement because of the power of attorney given his wife.

Dr. Wayland testified that when he signed the waiver he said to Mr. Mitchell: "Frank, this simply means that I do not take advantage of the statute of limitations?", and that Mitchell replied, "Yes, that is all it is"; that he told Mitchell on several occasions before signing the waiver that, "I do not feel legally or morally responsible for this note." When asked if, at the time he signed the waiver, he had denied liability on the note, he replied:

"A. It was ignorance that I didn't know all my liability. I thought Mr. Mitchell knew more about these business transactions than I did, and he never at any time accused me of saying that I would pay the note; he never told me that; *he told me that because Mrs. Wayland had signed this note and signed my name to this note, and that I had given her power of attorney that I was legally bound to pay that note.*

"Q. You didn't tell him that you wouldn't pay it, did you, Doctor?

"A. I couldn't tell him that I wouldn't because I didn't know how far my legal obligations extended. I had not consulted my attorney, but *he told me that was a fact, and I naturally thought it was a fact.*" (Italics ours.)

From this testimony the trier of the facts was entitled to find that Mitchell had represented to Dr. Wayland that he was legally responsible on the endorsement, and that it was upon that representation that the waiver was signed. This does not mean that Mitchell was guilty of active fraud. By 1928 La Motte had left the employ of the bank. Mitchell, the new manager and vice-president, did not have possession of the same facts known only to La Motte. Mitchell may not have known, and probably did not know, that the bank had knowledge of facts that legally charged it with knowledge that the Dr. Wayland endorsement was for the accommodation of Rucker. Without imputing any intent on the part of Mr. Mitchell to overreach Dr. Wayland, the most likely explanation of the situation is that Mitchell, in good faith, made the representation to Dr. Wayland.

It is true that in reliance on the waiver the bank may have failed to take steps to enforce the liability against Rucker and Mrs. Wayland's estate, believing that in any event it had the liability of Dr. Wayland. Any loss of the bank in reliance on the waiver was brought about not by Dr. Wayland, but by the bank's failure, through its officers then in charge, to clearly ascertain the facts and law bearing on Dr. Wayland's liability.

The appellant makes the further contention that the trial court failed to find on the issue that respondent was estopped to deny liability. The claim of estoppel is based on the same facts upon which the claim of ratification is predicated. The same ·reasons which uphold the trial court on the issue of ratification also preclude an estoppel.

Interpreting the evidence most favorable to respondent, and disregarding all conflicts, as we must, the case is one where the bank knew that Mrs. Wayland signed her husband's name for the accommodation of Rucker; where the bank is chargeable, as a matter of law, with knowing that Dr. Wayland was not liable on the endorsement; and where the officers of the bank represented to Dr. Wayland that he was legally responsible, and secured a waiver from him based on that misrepresentation. There was either a mistake of law by both parties, or a misrepresentation of the law by the bank officials who were legally chargeable with notice of facts which demonstrated that the doctor was not legally responsible. No case has been cited that holds that a waiver of the

statute secured under such circumstances can constitute a ratification. Had the trial court on the conflicting evidence found in favor of the bank, then its position would be impregnable. Having found in favor of Dr. Wayland on conflicting evidence, we have no power to disturb the finding.

The judgment appealed from is affirmed.

Knight, J., and Ward, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 9, 1940, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 9, 1940. Curtis, J., and Carter, J., voted for a hearing.