[Civ. No. 19334.  Second Dist., Div. Two.  Oct. 7, 1953.]

CHARLES GATES, Respondent, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Appellant.

[Civ. No. 19335.  Second Dist., Div. Two.  Oct. 7, 1953.]

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Appellant, v. WILLIAM HERBERT HALL et al., Respondents.

Samuel B. Stewart, Jr., Hugo A. Steinmeyer and George L. Beckwith for Appellant.

William Herbert Hall in pro. per., and Joseph Henry Wolf for Respondents.

FOX, J.—The two cases here involved were consolidated for trial by stipulation. In case No. 19334, Charles Gates, as assignee for purposes of suit and collection of William H. Hall, his wife Doris G. Hall, and Bess L. Gates, brought an action against defendant (hereinafter called the bank) for the recovery of $2,552.63.* The claim arose as the result of the payment by the bank of 10 drafts drawn on William H. Hall, which were charged by the bank to the account of plaintiff's assignors. The bank's answer admitted charging plaintiff's assignors' checking account the sum of $2,552.63, covering the amounts represented by the bank drafts, but denied that it cashed the drafts without authorization. By way of affirmative defense, the bank pleaded that after charging the amount of the drafts to plaintiff's assignors' account, "plaintiff's assignors made claim to the said bank that said charges to said account were unauthorized and demanded reinstatement in their account of the amount so charged; defendant denies (sic) such claim and asserted the drafts referred to in the complaint were drawn by the authority of the plaintiff's assignors . . . [and] were properly charged to their account. Thereupon plaintiff's assignors agreed with the defendant bank that they would accept such charges; that the defendant bank did lend to plaintiff's assignors, William Herbert Hall and Doris Gates Hall, the sum of $2,500.00; . . . and plaintiff's assignors released all their claim and demand against the defendant bank with respect to the latter alleged in the complaint." In another separate defense, the bank asked for judgment on two $1,000 notes executed to it by Mr. and Mrs. Hall.

Case No. 19335 was an action by the bank against Mr. and Mrs. Hall on two promissory notes, each in the amount of $1,000. In this action the Halls set up as a counterclaim the same claim sued on by Charles Gates in case No. 19334.

The testimony showed that on or about December 30, 1946, Mr. and Mrs. Hall and Bess L. Gates opened a commercial account at the Sunset-Clark branch of the bank. The funds in this account could be withdrawn only upon the signature or authority of any one of the depositors. During the month of February, 1947, the bank received through clearings 10 drafts drawn by one A. B. Steuer on Mr. Hall and addressed to Hall at the Sunset-Clark branch. These drafts were paid

*These actions were filed prior to the amendment increasing the jurisdiction of the municipal court to $3,000.

by the bank, which concedes that Mr. Steuer was not authorized to sign on the Halls' account.

Prior to the payment of the 10 drafts here in issue, Mr. Hall had instructed Mr. Steuer to draw drafts on him at the Sunset-Clark branch. In several instances where this was done previous to February, 1947, the bank, upon receiving such drafts, made payments thereunder after notifying Mr. Hall and receiving either his authorization to honor the draft or a check covering the amount. This procedure was not followed with respect to the 10 drafts received by the bank in February, 1947, which were paid and charged to the Halls' account without consulting any of the depositors. The bank had no written authority to cash drafts on Hall drawn by Steuer. Mr. Sheehy, assistant cashier of the Sunset-Clark branch, had requested such authorization, but none was ever furnished.

Mr. Hall testified that shortly after the bank paid the drafts he learned of the payments by way of a telephonic call from "some girl" at the bank regarding a check for $300 which he had drawn on his account, which could not be honored because there was less than $100 in the account. He thereupon remonstrated that the situation was "ridiculous" inasmuch as the account contained "close to $3,000.00." Upon discovering that the drafts had been charged to the account, Mr. Hall visited the bank, on or about March 5, 1947, at which time he negotiated a loan of $2,500, executing therefor a promissory note to the bank in that amount. He testified this money was deposited in his account to replenish it in the approximate amount of the drafts, and that he had demanded that the bank reimburse him for the amount of these drafts charged to his account. Mr. Hall denied that he would have authorized the bank to pay any of the drafts if the bank had communicated with him in advance with reference to their acceptance.

On April 4, 1947, Mr. Hall paid the $2,500 due on the note. Early in May, 1947, he and Mrs. Hall obtained a loan of $1,000 from the bank, evidenced by a promissory note executed by them. On about May 28, 1947, they secured another $1,000 loan in exchange for their promissory note. The sums realized on both these loans were deposited to their account with the bank, and have not been repaid. These notes are the basis for the bank's counterclaim as well as for its separate action in case No. 19335.

The trial court gave judgment for plaintiff Charles Gates in the sum of $2,552.63, plus interest, against which the bank was given an offset of $2,000, plus interest and attorney's fees, on the two unpaid notes. The judgment was grounded on the court's finding that none of the payments made by the bank on the 10 drafts and charged to the Hall account were authorized or approved, and that such payments had not been subsequently ratified.

Granting that it exceeded its authority in paying the drafts prior to express authorization, the bank contends upon this appeal that the evidence, as a matter of law, establishes that its payment of the drafts was ratified by the acts and conduct of Mr. Hall. This argument is not supported by the record. In its brief, the bank urges that "there is no evidence in the record that at the time Mr. Hall executed the note for $2,500 . . . at which time he had full knowledge the drafts had been paid, he made any objections to the payment of the drafts, or that he repudiated the payment, or that he requested the Bank to recredit the account with the amount of the drafts and that the Bank refused." However, Mr. Hall testified upon direct examination that he demanded that the bank repay him the sum total of the 10 drafts it had cashed without his authorization. Furthermore, in its own answer by way of affirmative defense, the bank alleged that "plaintiff's assignors made claim to the said bank that the said charges to said account were unauthorized and demanded reinstatement in their account of the amount so charged. . . ."

█ A party may not make a contention based on a statement of fact contrary to the admission in his own pleading. (*Bloss* v. *Rahilly*, 16 Cal.2d 70, 77 [104 P.2d 1049]; *Rhode* v. *Bartholomew*, 94 Cal.App.2d 272, 278-279 [210 P.2d 768].)

█ Although the bank also alleged that upon its denial of the claim that its payments were unauthorized the Halls "agreed with the . . . bank that they would accept such charges," the evidence and the inferences therefrom merely give rise to a question of fact as to whether there was ratification by acquiescence or a repudiation, which the court resolved against the bank. (*Rhee* v. *L. K. Small Co.*, 83 Cal.App. 339, 344 [256 P. 839]; *Hooker* v. *American Indem. Co.*, 12 Cal. App. 2d 116, 123 [54 P.2d 1128].)

The bank contends, upon the sound authority of *Ralphs* v. *Hensler*, 97 Cal. 296 [32 P. 243], and similar cases, that it is not essential that it be shown that there was express ratification of an unauthorized transaction, since ratification "is

implied whenever the acts and conduct of the principal, having full knowledge of the facts, are inconsistent with any other supposition than that of . . . an intention to abide by the act, although it was unauthorized." The bank's position is that the acts and conduct of Mr. Hall, after learning of the payments, and of his executing a promissory note to the bank and repaying it, are inconsistent with any other premise than that of his intention of confirming the bank's act. ■ However, "for purposes of ratification there must be 'confirmatory conduct, or at least conduct inconsistent with disapproval. Facts are not to be stretched, or ambiguous, inconclusive or independent acts made the basis of a ratification.' " (*Schomaker* v. *Petersen*, 103 Cal.App. 558, 569 [285 P. 342].) The evidence shows Mr. Hall objected to the withdrawals made from his account. ■ The fact that he borrowed from the bank in order to restore his account to its previous balance, and his subsequent repayment of that loan, is far from lending itself to the single, inexorable interpretation that he intended thereby to sanction the bank's action. In the course of commercial transactions numerous instances may be found of disputes between parties, regarding a particular item, which do not preclude the conduct of further business relations while the settlement of the contested matter remains in abeyance. It cannot be said that Mr. Hall's actions were consistent only with approval of the bank's unauthorized act.

■ Ratification inferred from conduct is not a fact to be assumed but is a matter of defense, "and the burden of proof rests upon the one who alleges it." (*Rhee* v. *L. K. Small Co.*, 83 Cal.App. 339, 344 [256 P. 839].) The record fully supports the trial court's determination that the bank failed to sustain this burden. (*California Bank* v. *Sayre*, 85 Cal. 102 [24 P. 713]. ■ As was said in *Bank of America* v. *Perry*, 41 Cal.App.2d 133, 136 [106 P.2d 53], in which the court found no ratification had occurred: "The evidence, which was largely uncontradicted, is capable of two interpretations, each equally reasonable. Findings in favor of either party would find ample support in the record. Under such circumstances, the case is one resting entirely and peculiarly within the discretion of the trial court."

It is deserving of special mention that in the cases cited by the bank where ratification was implied, the rights of some innocent third party who had dealt with the purported agent were involved. ■ There is no question but that where the rights of third persons depend on his election, the rule

is a principal must disaffirm an unauthorized act of his agent within a reasonable time after acquiring knowledge thereof, else his silence may be deemed ratification or acquiescence in order to protect an unsuspecting third party. (*Triggs* v. *Jones,* 46 Minn. 277 [48 N.W. 1113, 1115] ; *Pacific Vinegar & Pickle Works* v. *Smith,* 152 Cal. 507, 511 [93 P. 85].) In *Triggs* v. *Jones, supra,* 1115-1116 [48 N.W.], it is stated that the reasons for such a rule do not apply with equal force in favor of the agent who has committed an unauthorized act.

■ ''Consequently mere passive inaction or silence which would amount to an implied ratification in favor of third parties, might not amount to that in favor of the agent. . . .'' This same proposition is given elaborate expression by our Supreme Court in the case of *Pacific Vinegar & Pickle Works* v. *Smith, supra,* (511, 512) : ''But upon a moment's reflection it will become apparent that the reason for applying the rule in all its liberality to innocent third persons does not exist in the same broad and benignant sense to the unwarranted . . . act of the agent. . . . It is limited, so far as the agent is concerned, to those cases where there remains with the principal, after his first complete knowledge of the transaction, the power to rescind, and failing so to do he is properly charged with full acceptance of all the responsibilities of the contract, even to the exoneration of his agent, because, with the ability to rescind, if he had rescinded, the transaction would be at an end and nobody would be injured.''

■ In harmony with these principles, it appears clear that where the rights and obligations of third parties are not involved, and the controversy relates solely to whether a principal has exonerated the admittedly unauthorized act of his agent by ratification implied from conduct, such intention to confirm should rest on unequivocal evidence, and must be manifested by acts inconsistent with any other hypothesis. (*Schomaker* v. *Petersen,* 103 Cal.App. 558, 569 [285 P. 342].) It is thus clear that nothing in Mr. Hall's statements or conduct required the court, as a matter of law, to find that he had impliedly ratified the bank's admittedly unauthorized acts in charging the drafts to his account.

The judgment is affirmed.

Moore, P. J., concurred.

Mr. Justice McComb, deeming himself disqualified, did not participate herein.