**John R. HALL and Enis E. Hall, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. C–48017.**

United States District Court, N. D. California.

July 24, 1970.

**1136**

Donald M. Layne, Layne, Brodie & Germino, Palo Alto, Cal., for plaintiffs.

James L. Browning, Jr., U. S. Atty., Steven Kazan, Asst. U. S. Atty., San Francisco, Cal., for defendant.

*Memorandum Decision*

GERALD S. LEVIN, District Judge.

This action is brought under the provisions of the Federal Tort Claims Act, 28 U.S.C. § 1346(b). Defendant disputes this allegation of jurisdiction, contending that the present action is time-barred by the two-year statute of limitations applicable here and contained in 28 U.S.C. § 2401(b).[1]

The relevant facts of this case are as follows: Plaintiffs are husband and wife who seek damages from the United States, alleging that negligent treatment of Mrs. Hall at the hands of a military doctor, while Mr. Hall was engaged in active military duty, resulted in a condition of infertility.[2]

John R. Hall was a first lieutenant in the United States Marine Corps on active duty and stationed at the Marine Corps Base at Twentynine Palms, California, from August, 1960, through September, 1962. Enis E. Hall was then the wife of John R. Hall, and as such, was a service dependent eligible for military medical care while he was on active duty.

On or about December 12, 1960, and February 2, 1961, Mrs. Hall received

---

1. § 2401. *Time for commencing action against the United States*
   \* \* \* \* \* \*
   (b) A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

2. Under Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the general rule is that "the government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." This rule does not, however, bar an action brought by a serviceman's wife for injuries to herself. Crosby v. Meredith, 300 F.2d 323 (4th Cir. 1962); Callaway v. Garber, 289 F.2d 171 (9th Cir. 1961); Costley v. United States, 181 F.2d 723 (5th Cir. 1950); Herring v. United States, 98 F. Supp. 69 (D.Colo.1951); 35 Am.Jur.2d Federal Tort Claims Act § 79 at 353. Moreover, the serviceman husband is also entitled to recover for any derivative or consequential damages suffered as a result of the alleged injuries to his wife. Messer v. United States, 95 F.Supp. 512 (N.D. Fla.1951). *See also* Grigalauskas v. United States, 103 F.Supp. 543 (D.Mass. 1951), aff'd, 195 F.2d 494 (1st Cir. 1952); Wilscam v. United States, 76 F. Supp. 581 (D.Hawaii 1948); 64 A.L.R. 2d 679 Anno.—Federal Tort Claims Act— Servicemen § 3 at 687.

out-patient treatment at the Base Medical Facility, Marine Corps Base, Twentynine Palms. At that time and place Mrs. Hall was treated by Dr. Carl C. Pearman within the course and scope of his employment by the United States. Dr. Pearman treated her for a form of pelvic inflammatory disease, although the evidence does not disclose the exact cause or form of such disease.

Thereafter, although the plaintiffs attempted to conceive a child, they found their efforts to be fruitless. Suspecting possible infertility, Mrs. Hall went to a Dr. Hoag in 1964 to ascertain the nature of her inability to conceive a child and whether such condition could be corrected. Pursuant to his examination and treatment of Mrs. Hall in April, 1964, Dr. Hoag had before him a radiology report from one Dr. Brean evaluating a prescribed uterosalpingogram of Mrs. Hall. The conclusion in the report, "Bilateral hydrosalpinx. No evidence of tubal patency.", is a common end result of pelvic inflammatory disease—that for which Mrs. Hall had been treated by Dr. Pearman in 1960 and 1961.

Mrs. Hall continued to see various doctors until July, 1967, when plaintiffs allege that they "first became aware that plaintiff, Enis E. Hall, had received inadequate and negligent medical care from C. C. Pearman, M.D." Plaintiffs then proceeded to file their Complaint herein on October 11, 1967.

■ Following the trial of this action and upon examination of the papers on file and the pertinent authorities, this court is convinced that the present action is time-barred by 28 U.S.C. § 2401(b). It is, of course, federal law to which this court must look in determining whether a claim is time-barred under the Federal Tort Claims Act. Hungerford v. United States, 307 F.2d 99, 101–102 (9th Cir. 1962); 7 A.L.R.3d 732 Anno.—Federal Tort Claims Act—Time Limits § 2 at 734–735.

The Ninth Circuit has adopted a "discovery" rule for determining time limitations for malpractice actions brought under the Federal Tort Claims Act:

> [U]nder federal law, a claim for malpractice accrues against the government when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged malpractice. Hungerford, supra at 102.

Accord: Ashley v. United States, 413 F.2d 490, 492 (9th Cir. 1969); Brown v. United States, 353 F.2d 578, 579 (9th Cir. 1965).

■ The evidence reveals that plaintiffs had actual notice no later than September, 1965, of the acts of Dr. Pearman in 1960 and 1961 which would form the basis for the claimed malpractice. Plaintiffs stated as follows in paragraph seven of their Complaint:

> That plaintiff, Enis E. Hall, had infertility tests done in an effort to discover why she was unable to conceive a child in May, 1964, September 1964 and in the Summer of 1965 terminating in the month of September 1965. Following this series of infertility tests, both plaintiffs accepted as fact that plaintiff, Enis E. Hall, was permanently sterile and that the sterility resulted from the pelvic inflammatory disease for which plaintiff, Enis E. Hall, was treated by C. C. Pearman, M.D. on December 12, 1960.

This allegation in the Complaint is a binding judicial admission[3] as to the

---

3. It is a basic rule that statements made in a Complaint may be admitted against the pleader as evidence in the form of judicial admissions. Sanitary Milk Producers v. Bergjans Farm Dairy, Inc., 368 F.2d 679, 687 (8th Cir. 1966); Giannone v. United States Steel Corporation, 238 F.2d 544, 547 (3d Cir. 1956); Stolte v. Larkin, 110 F.2d 226, 232–233 (8th Cir. 1940); Yaskin v. Allston, 179 F.Supp. 757, 758 (E.D.Pa.1959), aff'd per curiam, 277 F.2d 926 (3d Cir. 1960); IX Wigmore on Evidence § 2588 at 586 (3d ed. 1940); McCormick on Evidence § 239, § 242 at 508–509 (1954 ed.); 31A C.J.S. Evidence § 301 at pp. 772–773; 29 Am.Jur.2d Evidence § 615 at 668, § 687 at 741. The usual rule is that such admissions are

facts stated therein and indicates at what point in time the plaintiffs knew about the facts upon which they now base their claim of malpractice.

In addition, the following was elicited during the cross-examination of Mr. Hall pursuant to the court's granting plaintiffs' motion to reopen their case:

BY MR. KAZAN: Q In fact, I believe your wife testified that certainly no later than September of 1965 you both knew the blocked tubes revealed by that x-ray were causally related to the 1960 infection?

A What we were told was that it probably was blocked tubes and it was probably due to the tubal infection that she had had in December 1960. That's what we were told; and that was in August of 1965.

MR. LAYNE: Was it in those words?

MR. HALL: As nearly as I can remember. At no point did Dr. Hoag ever say to us "absolutely you will be able to have your own."

The following was likewise elicited from the subsequent cross-examination of Mrs. Hall:

BY MR. KAZAN: Q Now, once again, Mrs. Hall, you testified yesterday that after the x-ray tests were done in April of 1964, Dr. Hoag told you that you had what in layman's terms was called blocked tubes, and you also testified that he told you—he said sometime before August or September of 1965 that this condition was the result in all probability of the infection for which you were treated in 1960?

A Right.

Q Now—

THE COURT: What was your answer?

MRS. HALL: Yes.

BY MR. KAZAN: Q You received the records of your treatment at Twentynine Palms in March of 1966, correct?

A Right.

Q And you read those records?

A That's right.

Q Is it safe to assume, almost immediately upon receiving them you found the entry concerning your treatment on December 12th, 1960?

A I don't quite understand your question.

Q Right after you got the records, you saw what the doctor had written?

A Yes, he had written acute PID [Pelvic Inflammatory Disease].

Clearly, then, plaintiffs knew by September, 1965, if not earlier, that Mrs. Hall's condition of infertility was caused by pelvic inflammatory disease, which condition had been the subject of treatment at the hands of Dr. Pearman in 1960 and 1961.

■ Plaintiffs contend that the approach to be taken in determining the running of time pursuant to 28 U.S.C. § 2401(b) is one which looks to knowledge of legal rights (i. e., malpractice and a cause of action therefor) rather than of specific facts or acts. Neither case law nor reason supports this view, and this court does not regard such to be the law of this or any other federal court. In the passage quoted above from the *Hungerford* case, the court there required actual knowledge or reasonable diligence in discovering same as to the *"acts* constituting the alleged malpractice." (Emphasis added.) If the court in *Hungerford* had intended that the requisite degree of knowledge, whether actual or constructive, necessary to begin the running of the statute of limitations un-

conclusive, C. H. Elle Construction Co. v. Western Casualty & Sur. Co., 294 F.2d 459, 462 (9th Cir. 1961); IX Wigmore § 2590 at 587; McCormick § 242 at 472; Witkin, California Evidence § 501 at 472 (2d ed. 1966), although such admissions

will not defeat a cause of action where they are of probative rather than of ultimate facts. Peters v. Lines, 275 F.2d 919, 928 (9th Cir. 1960); *cf.* State Farm Mut. Auto Ins. Co. v. Porter, 186 F.2d 834, 843 (9th Cir. 1950).

der 28 U.S.C. § 2401(b) was of the existence of malpractice, we assume it would have said as much. Rather, it is only necessary that the party be aware of those facts the knowledge of which would, upon the exercise of reasonable diligence, have led to discovery of the malpractice alleged. In the present action, therefore, the plaintiffs could have ascertained that a possible cause of action for malpractice existed in their favor upon the receipt of the information from Dr. Hoag in 1964 and 1965 above noted, and "reasonable diligence" means that at *that* point they had two years in which to check with other doctors, attorneys or the like to determine if Mrs. Hall had been negligently treated in 1960–1961.

Accordingly, the court finds that the two-year statute of limitations contained in 28 U.S.C. § 2401(b) began to run not later than September of 1965 and, not being tolled, presents a complete bar to the maintenance of the present action pursuant to the Complaint filed herein on October 11, 1967.