[Civ. No. 46263. First Dist., Div. Three. Aug. 21, 1981.]

ELECTRONIC EQUIPMENT EXPRESS, INC., et al., Plaintiffs, Cross-defendants and Respondents, v.
DONALD H. SEILER & CO. et al., Defendants, Cross-complainants and Appellants.

COUNSEL

William R. Dickerson, Horvitz & Greines and Barry R. Levy for Defendants, Cross-complainants and Appellants.

Cooley, Godward, Castro, Huddleson & Tatum, Thomas A. H. Hartwell and John B. Bates, Jr., for Plaintiffs, Cross-defendants and Respondents.

OPINION

WHITE, P. J.—Defendants and appellants Donald H. Seiler & Co. and Angelo Peter Maffei appeal from a judgment for Electronic Equipment Express, Inc., James Clements and John White (hereafter EEE or respondents) after a jury found appellants liable for accounting malprac-

tice. Appellants contest only the trial court's rulings and the jury's findings on their statute of limitations defense.[1] Specifically appellants contend that: (1) respondents' cause of action was barred by the statute of limitations and appellants' cross-complaint, filed September 19, 1975, did not toll the statute; (2) in any event, there was not substantial evidence to support the jury's finding that respondents did not discover, or with reasonable diligence could not have discovered, appellants' alleged negligence prior to September 19, 1973, or that actual damages occurred after September 19, 1973; (3) the jury's special verdict on the statute of limitations defense was tainted by prejudicially erroneous instructions; and (4) special verdict question Nos. 2 and 3 were so imprecise that the jury never determined the facts sufficient for the trial court to rule on the statute of limitations defense. We affirm the judgment.

*Facts*

In July 1972, respondents engaged appellant Donald H. Seiler & Co. as its certified public accountant to supervise the work of the in-house bookkeeper, Mr. Gosney, to provide monthly financial statements, and to prepare an audit for the fiscal year ending April 30, 1973. Appellant Donald H. Seiler & Co. assigned its employee Angelo Peter Maffei to handle the account.

At the initial meeting regarding the engagement, Maffei was advised by James W. Clements, president and chief executive officer of EEE, that the company was expanding and needed the assistance of a certified public accountant to overcome the limitations of Mr. Gosney and to make sure that the books and records of the company were correctly maintained. Maffei further understood that if he found any deficiencies in the maintenance of the company's financial records, he should rectify them.

The two basic financial documents that came out monthly were the balance sheet and operating statement, which historically had been prepared by Gosney. Maffei began reviewing the records in August or September 1972 and the first statement in which he was involved was

---

[1]The trial court ruled on appellants' statute of limitations defense at a special trial preceding a trial on the merits. However, a determination at such a special trial is only reviewable from the final judgment on the merits. (Code Civ. Proc., § 597; *Woodhouse v. Pacific Elec. Ry. Co.* (1952) 112 Cal.App.2d 22, 25 [245 P.2d 701].)

for September 1972; he continued reviewing the monthly statements through the month ending March 31, 1973.

Maffei prepared a 1973 income projection predicting increased revenues. He also helped prepare the audited yearend statement as of April 30, 1973, submitted to respondents on August 11, 1973, and the unaudited statement for the three-month period ending July 31, 1973, which Clements received in September 1973.

Shortly after appellants were engaged, respondents set up a subsidiary in New Jersey to handle their business on the east coast and were considering expanding into the computer refurbishing business. Since the subsequent monthly statements showed escalating earnings, it appeared to the management of EEE and to Maffei that expansion was justified. As a result EEE entered the refurbishing business in January 1973.

After the March 31, 1973, statement came out, Maffei advised Clements to take measures to reduce the income tax liability. Accordingly, respondents declared bonuses, established profit sharing plans, and made various capital investments.

During this same period, appellants began the audit for the year ending April 30, 1973. The audit lasted over four months and was presented to Clements on August 11, 1973. During the period of the audit, appellants submitted no monthly financial statements to respondents and failed to advise respondents as to EEE's financial condition despite numerous requests by Clements for information and to expedite the audit.

The financial picture manifest in the yearend audit statement was considerably different than that reflected in the monthly reports. Contrary to the success shown in the March 31 statement exhibiting an excess of $78,000 in assets over liabilities and current assets of $20,000 over current liabilities, the audited report disclosed a reduction of net worth of approximately $171,248. Clements was aware of these discrepancies but he testified that he did not realize they were due to appellants' accounting errors at that point in time.

At no time did appellants express reservations as to EEE's viability, having issued an unqualified opinion in its audit for the year ending April 30, 1973, or any concerns that EEE's subsidiary operations might lead the company to insolvency.

By the time of the submission of the audit on August 11, 1973, EEE had overdrafts at the bank and was in arrears on its federal payroll withholding taxes, which by September had reached $113,000.

On September 13, 1973, Union Bank foreclosed on the approximately $41,200 remaining on its $50,000 loan to respondent by offsetting against funds received from United Van Lines, which had been assigned as collateral. After the offset, approximately $11,000 remained in EEE's account for its use, sufficient to cover a few days of operation expenses. Respondents immediately obtained alternate financing with Transport Clearings and discontinued further expansion of the business.

Respondents were first contacted by the Internal Revenue Service regarding the withholding taxes in August 1973 and a payment schedule was established in October 1973. During this same period, summer and fall 1973, EEE's sales were at an all time high.

Respondents replaced appellants in October 1973 with Thomas Meehan, a certified public accountant, who joined the company as an employee. He was hired to provide reliable and accurate accounting information, to render financial advice and to inform EEE of its true financial condition. At the time Meehan was hired Clements did not understand the reason for the financial difficulties EEE had been experiencing. He had continued to rely on appellants' expertise until Meehan was hired, particularly since he had little knowledge of financing and accounting.

Meehan began his review of the company's books and records, and appellants' statements and related materials immediately, and in November or December 1973 he was able to determine that the subsidiary operations should be terminated. In the course of his review, Meehan discovered numerous errors in appellants' work, including the monthly statements and the audit. Specifically Meehan found that appellants had understated EEE's loss by approximately $93,000 and had failed to include a reserve for taxes. Further, the financial statement for the three-month period ending July 31, 1973, overstated income by $67,000.

On November 29, 1973, the Internal Revenue Service filed a lien against EEE. This caused the demise of the business, according to Meehan, because within two to three weeks very few orders were placed. Customers discovered the lien and declined to place equipment with EEE. EEE was forced to close its doors on December 24, 1973.

Respondents filed their complaint for damages for accounting malpractice on November 12, 1974 some four months after EEE had been suspended as a corporation for nonpayment of its corporate franchise tax. (Rev. & Tax. Code, § 23301.) Appellants demurred to the complaint four times with the last attempt being overruled. Thereafter, on September 19, 1975, appellants filed a cross-complaint against respondents to recover the value of their services. On December 22, 1975, appellants filed its answer raising for the first time that respondents' cause of action was barred by the statute of limitations because EEE had its corporate powers suspended prior to the filing of the action. (Rev. & Tax. Code, § 23301.)

Appellants twice moved for summary judgment on the ground that respondents' action was barred by the statute of limitations. Both motions were denied. On April 26, 1976, EEE's corporate powers were reinstated. (Rev. & Tax. Code, § 23305a.) The special trial on the statute of limitations defense was subsequently held, and this appeal followed.

I

Revenue and Taxation Code section 23301 states: "Except for the purpose of amending the articles of incorporation to set forth a new name, the corporate powers, rights and privileges of a domestic taxpayer, may be suspended" upon nonpayment of taxes and assessments. A corporation which has been suspended pursuant to section 23301 is without capacity to prosecute or to defend a civil action while suspended. (*Reed* v. *Norman* (1957) 48 Cal.2d 338 [309 P.2d 809].) Section 23305a of the same code provides for a certificate of revivor upon payment of the delinquent taxes by the corporation, and "Upon the issuance of such certificate by the Franchise Tax Board the taxpayer therein named shall become reinstated *but such reinstatement shall be without prejudice to any action, defense or right which has accrued by reason of the original suspension or forfeiture.*" (Italics added.) A statute of limitations defense which accrues while a corporation's powers are suspended is one such defense which cannot be prejudiced by revival of the corporation. (*Welco Construction, Inc.* v. *Modulux, Inc.* (1975) 47 Cal.App.3d 69 [120 Cal.Rptr. 572], per Scott, J.)

Respondents conceded below and they concede again on appeal that the filing of their complaint on November 12, 1974, did not toll the two-year statute of limitations applicable in professional negligence actions. (See Code Civ. Proc., § 339, subd. 1.) Rather respondents have

argued, and the court below apparently agreed that the filing of the cross-complaint tolled the statute of limitations for respondents' claims. Upon revival of the corporation in April 1976, respondents were able to proceed with their action even though the statute of limitations would have run during EEE's suspension. Therefore, the threshold issue is whether the filing of a cross-complaint, to a complaint by a suspended corporation (Rev. & Tax. Code, § 23301), tolls the statute of limitations so that the corporation may proceed with its original action upon revival. The matter is one of first impression and we begin our analysis by examination of the rules regarding tolling of statutes of limitations.

■ "It is fundamental that the primary purpose of statutes of limitation is to prevent the assertion of stale claims by plaintiffs who have failed to file their action until evidence is no longer fresh and witnesses are no longer available. '[T]he right to be free of stale claims in time comes to prevail over the right to prosecute them.' [Citations.] The statutes, accordingly, serve a distinct public purpose, preventing the assertion of demands which through the unexcused lapse of time, have been rendered difficult or impossible to defend." (*Addison* v. *State of California* (1978) 21 Cal.3d 313, 317 [146 Cal.Rptr. 224, 578 P.2d 941]; see *Elkins* v. *Derby* (1974) 12 Cal.3d 410, 419 [115 Cal.Rptr. 641, 525 P.2d 81, 71 A.L.R.3d 839].) ■ Accordingly, the courts have fashioned a rule that a statute of limitations is suspended or tolled as to a *defendant's* then unbarred causes of action against the plaintiff arising out of the same transaction by the filing of the plaintiff's complaint. (*Jones* v. *Mortimer* (1946) 28 Cal.2d 627 [170 P.2d 893]; *Trindade* v. *Superior Court* (1973) 29 Cal.App.3d 857 [106 Cal.Rptr. 48]; *Holtzendorff* v. *Housing Authority* (1967) 250 Cal.App.2d 596 [58 Cal.Rptr. 886], cert. den. 389 U.S. 1038 [19 L.Ed.2d 827, 88 S.Ct. 775].) "'The principle underlying the rule that a statute of limitations is suspended by the filing of the original complaint is that the plaintiff has thereby waived the claim and permitted the defendant to make all proper defenses to the cause of action pleaded.'" (*Trindade, supra*, 29 Cal.App. 3d at pp. 859-860.)

■ Appellants argue that the tolling doctrine has no application to the facts of this case because the filing of the cross-complaint was involuntary (Code Civ. Proc., § 426.30) and as such did not serve to waive their statute of limitations defense. Generally a cross-complaint is "involuntary" in the sense that a defendant/cross-complainant is brought into the action by the plaintiff (*Seaman* v. *Superior Court of Marin*

*County* (1920) 183 Cal. 47, 49 [190 P. 441]) and must assert all claims arising out of the same transaction or those claims are forever waived.

The cross-complaint in this case, however, was voluntarily filed. At the time appellants filed their cross-complaint EEE's corporate powers were in suspension and it could not validly prosecute or defend an action. (Rev. & Tax. Code, § 23301; see *Peacock Hill Assn.* v. *Peacock Lagoon Constr. Co.* (1972) 8 Cal.3d 369, 371 [105 Cal.Rptr. 29, 503 P.2d 285].) And although an invalid prior action and judgment can be retroactively validated (*Traub Co.* v. *Coffee Break Service, Inc.* (1967) 66 Cal.2d 368, 370-372 [57 Cal.Rptr. 846, 425 P.2d 790]; *Hall* v. *Citizens Nat. Tr. & Sav. Bank* (1942) 53 Cal.App.2d 625, 630-631 [128 P.2d 545]), where a substantive defense accrues during corporate suspension, it cannot be prejudiced by revival of the suspended corporation. (*Welco Construction, Inc.* v. *Modulux, Inc., supra*, 47 Cal.App.3d 69, 74.) Appellants here could have ignored respondents' action without any prejudice to their claims by waiting until the limitations period had run before answering and cross-complaining. Instead, appellants sought affirmative relief from respondents *before* the statute of limitations had run when they were under no compulsion to do so, and at a time when their claim for accounting fees could not be prejudiced by their failure to cross-complain. The waiver theory would thus appear to be applicable by extension. By filing the cross-complaint appellants were relinquishing their right to assert the statute of limitations defense which would have run no later than December 24, 1975, two years from the time EEE stopped doing business. (See Code Civ. Proc., § 339, subd. 1.)

*Welco Construction, Inc.* v. *Modulux, Inc., supra*, 47 Cal.App.3d 69, upon which appellants place considerable reliance, does not compel a contrary result. The procedural sequence there was almost identical to that of the case at bench, except that the defendant in *Welco* filed its cross-complaint and answer at the same time. Thereafter, defendant was permitted to amend its answer to plead the statute of limitations, and the court ultimately granted defendant's motion for nonsuit on the ground that *Welco's* action was barred by the statute of limitations. (*Id.*, at p. 71.) The question presented here as to whether a cross-complaint would toll the statute of limitations on a suspended corporation's claims, however, was not considered in *Welco.* Although we continue to adhere to the teaching of *Welco*, we conclude that the right to assert a substantive defense such as the statute of limitations can nevertheless be waived.

Appellants' argument that their cross-complaint was ineffectual until respondents could properly bring appellants into the action is similarly without merit. It is true that a cross-complaint may only be filed after a defendant has been properly brought into an action by the filing of a complaint. (*Kennaley* v. *Superior Court* (1954) 43 Cal.2d 512, 516 [275 P.2d 1]; *Dabney* v. *Shippey* (1974) 40 Cal.App.3d 990, 993-994 [115 Cal.Rptr. 526]; see Code Civ. Proc., § 428.10.) However, the complaint of a suspended corporation is not a nullity. (*Hall* v. *Citizens Nat. Tr. & Sav. Bank, supra*, 53 Cal.App.2d 625, 630.) The prosecution of the complaint is merely suspended. (*Traub Co.* v. *Coffee Break Service, Inc., supra*, 66 Cal.2d 368, 370-372.) And as to matters occurring prior to judgment, the revival of corporate powers has the effect of validating the earlier acts and permitting the corporation to proceed with the action. (*Peacock Hill Assn.* v. *Peacock Lagoon Constr. Co., supra*, 8 Cal.3d 369, 373.) Indeed, a suspended corporation may obtain a judgment against a defendant and such judgment will be retroactively validated once reinstatement occurs. (*Traub, supra*, 66 Cal.2d 368.) A cross-complaint is thus fully effective against a suspended corporation. Buttressing this conclusion is the fact that, contrary to appellants' assertion, if a complaint is dismissed the cross-complaint may stand on its own. (*Tomales Bay etc. Corp.* v. *Superior Court* (1950) 35 Cal.2d 389, 394-395 [217 P.2d 968]; see 1 Cal.Jur.3d, Actions, §§ 256, 269, pp. 747, 761-762.)[2]

Permitting a cross-complaint to toll the statute of limitations for a plaintiff corporation's action would also not contravene the purpose of Revenue and Taxation Code section 23301. As indicated in *Traub* and its progeny, the purpose of section 23301 is to put pressure on the delinquent corporation to pay its taxes. (*Traub Co.* v. *Coffee Break Service, Inc., supra*, 66 Cal.2d at p. 370; see *Peacock Hill Assn.* v. *Peacock Lagoon Constr. Co., supra*, 8 Cal.3d 369, 371.) Section 23301 does not relieve the corporation of any substantive right, it merely suspends the power to assert those rights. (*Traub, supra*, 66 Cal.2d at pp. 370-371.) Since the cross-complainant can obtain a default judgment against the plaintiff corporation, the threat of such judgment would pressure the corporation to pay its taxes. Consequently, the purpose of the rule would be served.

---

[2]*Dabney* v. *Shippey, supra*, 40 Cal.App.3d 990, is not to the contrary. There the court did not permit the defendants to file a cross-complaint because the complaint was a sham and the defendants were improperly made defendants in order to avoid the bar of the statute of limitations which had run on said defendant's claims. That case is simply inapposite to the present case.

Likewise section 23305a of the Revenue and Taxation Code is not contravened by the holding in this case. Section 23305a normally would prevent the revival of a suspended corporation from prejudicing any substantive right which accrued during the period of suspension, but those rights can be waived by the person upon whom the right is conferred just as any other right can be voluntarily relinquished. Here appellants voluntarily relinquished their statute of limitations defense and thereby allowed respondents to proceed with their action upon revival of the corporation.

We are also persuaded that the rule we enunciate today would not undermine the aim of the statute of limitations which is to promptly apprise defendants of claims against them so that they may gather and preserve evidence. (See *Addison* v. *State of California, supra*, 21 Cal.3d 313, 317.) Appellants here were apprised of the claim against them within the limitations period and they in fact undertook discovery and the preservation of evidence. Accordingly, appellants suffered no prejudice of the type the statute of limitations seeks to avoid. We conclude that the filing of appellants' cross-complaint tolled the statute of limitations as to respondents' claims and upon revival of the corporation they properly proceeded with their action.[3]

---

[3]Note that the result reached here may also be justified by application of the equitable tolling doctrine whereby a plaintiff's action is tolled by plaintiff's own acts. The application of the doctrine requires timely notice to defendant of the claims plaintiff has against him, lack of prejudice to the defendant in gathering defense evidence, and reasonable and good faith conduct on the part of the plaintiff. (*Addison* v. *State of California, supra*, 21 Cal.3d 313, 319; *Elkins* v. *Derby, supra*, 12 Cal.3d 410, 414; see *Bollinger* v. *National Fire Ins. Co.* (1944) 25 Cal.2d 399, 410 [154 P.2d 399].) The equitable tolling doctrine "fosters the policy of the law of this state which favors avoiding forfeitures and allowing good faith litigants their day in court." (*Addison, supra*, 21 Cal.3d at pp. 320-321.) Examples of its application are as follows: The filing of a plaintiff's administrative claim tolled the statute of limitations on plaintiff's subsequent civil action. (*Dillon* v. *Board of Pension Commrs.* (1941) 18 Cal.2d 427 [116 P.2d 37, 136 A.L.R. 800].) The filing of a workmen's compensation claim tolled the limitations statute on a plaintiff's personal injury claim (*Elkins, supra*). The filing of an action in the wrong court tolled the statute for the filing of a later action where plaintiff promptly refiled in the proper court. (*Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 269 [104 Cal.Rptr. 761, 502 P.2d 1049].) The filing of a complaint improperly in federal court tolled the statute on plaintiff's state court action. (*Addison, supra*; see also *Bollinger, supra*, 25 Cal.2d 399 (statute tolled where complaint timely filed but dismissed as premature); *Schneider* v. *Schimmels* (1967) 256 Cal.App.2d 366 [64 Cal.Rptr. 273] (statute tolled where complaint timely filed in another state).)

As yet the courts have not applied the equitable tolling doctrine to allow a defendant's cross-complaint to toll the statute of limitations for a plaintiff's claim. However, in the case at bench the requirements for its application have arguably been met. Appellants (defendants) were promptly apprised of EEE's claims, and they undertook

## II

■ Having determined that the filing of appellants' cross-complaint tolled the statute of limitations as to respondents' claims we turn to the question of whether substantial evidence supports the jury's findings that respondents did not discover appellants' negligent acts before September 19, 1973, and that no actual damages occurred before this date.

■ At the outset, it bears mention that "[i]n resolving the issue of the sufficiency of the evidence, we are bound by the established rules of appellate review that all factual matters will be viewed most favorably to the prevailing party [citations] and in support of the judgment [citation]. All issues of credibility are likewise within the province of the trier of fact. [Citation.] 'In brief, the appellate court ordinarily *looks only at the evidence supporting the successful party, and disregards the contrary showing.*' [Citation.] All conflicts, therefore, must be resolved in favor of the respondent. [Citation.]" (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925-926 [101 Cal.Rptr. 568, 496 P.2d 480].)

■ We also observe that in an action for accountant's malpractice the statute of limitations commences to run when the cause of action accrues. (*Davies* v. *Krasna* (1975) 14 Cal.3d 502, 513 [121 Cal.Rptr. 705, 535 P.2d 1161, 79 A.L.R.3d 807]; *Budd* v. *Nixen* (1971) 6 Cal.3d 195, 200-201 [98 Cal.Rptr. 849, 491 P.2d 433].) A cause of action for professional malpractice accrues when the plaintiff *both* sustains appreciable and actual harm and discovers, or with reasonable diligence should have discovered, the wrongful acts. (*Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 190 [98 Cal.Rptr. 837, 491 P.2d 421]; *Budd, supra*, 6 Cal.3d at p. 203; *Bedolla* v. *Logan & Frazer* (1975) 52 Cal.App.3d 118, 131 [125 Cal.Rptr. 59]; *Moonie* v. *Lynch* (1967) 256 Cal.App.2d 361, 365-366 [64 Cal.Rptr. 55].)

■ The record here reveals that EEE was having a cash flow problem in mid-1973; that the April 30, 1973, financial statement, delivered August 11, 1973, differed significantly from the monthly financial statements and disclosed negative net worths; that the Internal Revenue Service had contacted respondents in late August concerning the withholding taxes which EEE had converted to its own use; that Union

discovery to preserve defense evidence. EEE also arguably acted in good faith because it can be said that appellants (defendants) caused EEE to shut down and to be unable to pay its taxes.

Bank contacted respondents on various occasions prior to September 19, 1973, expressing concern over EEE's financial soundness and had even called its loan on September 13, 1973. From this appellants argue that EEE's management was well aware of facts which would indicate negligence on the part of the accountant or at least lead a reasonable person to suspect such was the case. However, it is well settled that the overwhelming evidence of appellant must be disregarded if there is the slightest evidence of respondent to sustain a finding. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 250, p. 4241.) "'The testimony of a witness, even the party himself, may be sufficient.' [Citation.]" (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [122 Cal.Rptr. 79, 536 P.2d 479].)

Respondents' evidence in support of their claim that appellants' negligence was not discovered or reasonably could not be discovered before September 19, 1973, consists almost entirely of Clements' testimony. Clements testified that he did not understand why EEE had been experiencing financial difficulties before Meehan was hired, nor was he previously informed that the subsidiaries were in bad financial shape. Up to the time appellants' services were terminated, Clements continued to rely on their expertise, particularly since he had limited financial and accounting knowledge. And although Clements acknowledges receiving the yearend audit on August 11, 1973, which reported results substantially different from the previous monthly financial statements, he did not understand that the discrepancies were the result of appellants' negligence until he was so advised by Meehan in November 1973. At that point Meehan showed Clements how appellants had been negligent in the preparation of the monthly reports, the audit and the financial statements. Before this appellants did not advise respondents that they had any doubts as to the continued viability of EEE. Since our function is not to reweigh the evidence or to judge the credibility of witnesses (*Nestle* v. *City of Santa Monica, supra,* 6 Cal.3d 920, 925), we conclude that this evidence, though contradicted and susceptible of a contrary finding, was sufficient to sustain the jury's finding on discovery of the negligence.

Appellants seek to overcome this result by arguing that respondents' own pleadings conclusively establish that discovery of the alleged negligent acts occurred prior to September 19, 1973. We cannot agree.

In respondents' third amended complaint they allege that "On or about August 11, 1973 James W. Clements, President of EEE, discov-

ered that the financial statements and reports prepared by defendants since July 1972 presented a false picture and did not reflect the true financial condition of EEE and that the business had not, in fact, been as successful, or even approximate the success reflected in the financial statements." At trial, on cross-examination, appellants' counsel confronted Mr. Clements with the statement in the pleadings. Mr. Clements admitted that the statement was true.

It is true, as appellants urge, that under the doctrine of conclusiveness of pleadings evidence may not be received to contradict an admission on the pleadings and that findings contrary to such admissions must be disregarded. (*Malone* v. *Roy* (1897) 118 Cal. 512, 513-514 [50 P. 6]; 4 Wigmore, Evidence (Chadbourn rev. ed. 1972) § 1064; Witkin, Cal. Evidence (2d ed. 1966) § 501, p. 472.) Witkin explains the effect of such admissions as follows: "A judicial admission in a pleading ( ... by affirmative allegation ... ) is entirely different from an evidentiary admission. The judicial admission is not merely evidence of a fact; it is a conclusive concession of the truth of a matter which has the effect of removing it from the issues." (*Ibid.*) Nevertheless a distinction must be made between admissions which are merely probative and those which are dispositive of an issue. If the pleader alleges the former, evidence may still be received on the ultimate issue. (See *Mulford* v. *Estudillo* (1867) 32 Cal. 131, 138; *Hall* v. *United States* (N.D.Cal. 1970) 314 F.Supp. 1135.) At the same time, the pleader cannot dispute the allegation that he made. (*Gates* v. *Bank of America* (1953) 120 Cal.App.2d 571, 575 [261 P.2d 545].)

*Hall* v. *United States, supra*, 314 F.Supp. 1135, is illustrative. That case involved an action for medical malpractice resulting in plaintiff's sterility. The complaint was filed in October 1967 and it contained the following allegation concerning discovery of the negligent act: "That plaintiff, Enis E. Hall, had infertility tests done in an effort to discover why she was unable to conceive a child in May, 1964, September 1964 and in the summer of 1965 terminating in the month of September 1965. Following this series of infertility tests, both plaintiffs accepted as fact that plaintiff, Enis E. Hall, was permanently sterile and that the sterility resulted from the pelvic inflammatory disease for which plaintiff, Enis E. Hall, was treated by C. C. Pearman, M.D. on December 12, 1960." (*Id.*, at p. 1137.)

This allegation was held to be a binding admission as to the facts stated therein. It indicated at what point in time the plaintiffs knew

about the facts upon which they attempted to base their claim of malpractice and established that plaintiffs had such notice no later than September 1965. The statute of limitations thus barred the action.

Likewise in *Malone* v. *Roy, supra*, 118 Cal. 512, a mortgagee in possession, suing to foreclose, was held bound by his allegations of rental value of the premises. And in *Hendy Machine Works* v. *Pac. C. C. Co.* (1893) 99 Cal. 421 [33 P. 1084], the plaintiff, suing for the balance due for goods sold and work performed alleged that defendant had paid $31,177.80. A finding by the court that defendant had only paid $26,008.81 was held reversible error.

Here Clements' statement was conclusive of the fact that on August 11 he discovered that the financial statements presented a false picture and that the business was not as successful as reflected in the statements. However, this statement does not as a matter of law establish that respondents discovered appellants' alleged negligence on that date or that a reasonable person would have known appellants were negligent on August 11 with notice of such facts. The jury was therefore entitled to hear evidence on the discovery issue and to find that discovery did not occur until after September 19, 1973.[4]

 On the issue of when damages occurred, appellants again seek to overturn the jury's finding by relying on the evidence most favorable to their position. Specifically, they note that EEE's poor financial condition resulted in unwarranted expansion and overextension; that EEE's subsidiaries were a total loss by April 30, 1973; that Meehan testified that EEE was damaged by the April 30 audit; that Clements admitted that some of EEE's damage occurred prior to April 30, 1973; and that Clements admitted EEE was damaged by the delay in receiving the annual audit. Appellants also contend that respondents' complaint conclusively establishes that actual harm occurred before September 17, 1973, since they allege that they relied to their detriment on the false financial reports beginning in July 1972 and continuing for approximately one year.[5] Since it is possible to suffer the first actual damages long

---

[4]We also note that since the jury found that no actual damages had occurred until after September 19, 1973, the date respondents discovered the negligence is moot, for the cause of action did not accrue until both elements occurred. (*Budd* v. *Nixen, supra*, 6 Cal.3d 195, 201, 203; see discussion *post*, pp. 852-853.)

[5]Apparently appellants are referring to paragraph X of the complaint where respondents allege that Maffei served in an accounting capacity from July 1972 for a period of approximately one year thereafter.

after the occurrence of the acts of negligence (*Budd v. Nixen, supra,* 6 Cal.3d 195, 201), we conclude that the judicial admission was not dispositive of when damages occurred.

Respondents aver that the damages occurred when the Internal Revenue Service posted the tax lien against EEE. The lien caused customers to stop doing business with EEE which forced it to cease operations on December 24, 1973. Although we might be inclined to agree that EEE's deteriorating financial condition continuously from February or March 1973 constituted appreciable and actual harm (*Budd v. Nixen, supra,* 6 Cal.3d 195, 200), we cannot say as a matter of law that actual, damages occurred before the posting of the tax lien which eventuated in EEE's ultimate demise.[6] We conclude, therefore, that the jury's finding on the damages issue must likewise be upheld.[7]

## III

### A

■■■ Appellants' next contention is that the trial court erred in reversing the burden of proof concerning discovery of the negligent acts.[8]

---

[6]Appellants argue that in some cases whether damages have occurred can be a matter of law, citing *Yandell v. Baker* (1968) 258 Cal.App.2d 308 [65 Cal.Rptr. 606], overruled on other grounds in *Neel v. Magana, Olney, Levy, Cathcart & Gelfand, supra,* 6 Cal.3d 190, fn. 29. *Yandell* is not in point. It involved a summary judgment motion in an attorney malpractice case where the attorney had advised the corporation to dissolve for financial reasons. In affirming the trial court's granting of the motion, the Court of Appeal held that damages occurred no later than when the corporation was dissolved; they did not occur some time later when the Internal Revenue Service informed the plaintiff that the method of dissolution and distribution of the assets was a reorganization not a dissolution, which is taxable at an ordinary income rather than capital gain rate. As the court stated: "Once [the corporation] was dissolved ... the damage was done ...." (*Id.,* at p. 314.) Here the damage issue was one of fact. (*Oakes v. McCarthy Co.* (1968) 267 Cal.App.2d 231, 255 [73 Cal.Rptr. 127].) *Yandell* teaches us only that as a matter of law damages could not have occurred after EEE was dissolved.

[7]Respondents have also raised the argument that "[a]ppellant committed a variety of breaches at different times and under different circumstances. Each breach resulted in damages to Respondent, giving rise to a distinct and separate cause of action.... Accordingly, the propriety of the Jury's verdict is buttressed by the fact that certain wrongs did not even occur until after September 19, 1973 and thus, clearly the damages which resulted from such acts could not have occurred before that date." In view of our resolution of the issue of damages, we need not decide the merit or lack thereof of this argument.

[8]The court instructed the jury as follows: "In this trial the defendants have the bur-

Respondents concede the error but urge that it was not prejudicial. We agree that the error was harmless.

As indicated above, accrual of a cause of action for professional malpractice occurs when plaintiff has *both* (1) discovered the negligent act, *and* (2) suffered some appreciable and actual harm caused by the negligent act. (*Budd* v. *Nixen, supra*, 6 Cal.3d 195, 201, 203.) Here the jury found on substantial evidence that respondents' damages did not occur until *after* September 19, 1973. Once the jury found that no damages were suffered until after September 19, 1973, respondents' cause of action could not have accrued until after that date. Consequently, the statute of limitations could not begin to run until then. (*Ibid.*) The date respondents discovered the negligent acts effectively became moot. It is therefore unlikely that the jury was misled even though respondents argued to the jury that appellants bore the burden of proof on the discovery issue. Accordingly, reversal is not mandated. (See Cal. Const., art. VI, § 13; *LeMons* v. *Regents of University of California* (1978) 21 Cal.3d 869, 876 [148 Cal.Rptr. 355, 582 P.2d 946].)

## B

■ Appellants also contend that it was prejudicial error for the trial court to instruct the jury that it was to determine whether respondents' cause of action for accountant's malpractice should be barred by the statute of limitations since this was a matter of law for the court to decide.[9] In so instructing, the court informed the jury of the consequences of their factual determinations which resulted in prejudice to appellants' statute of limitations defense. The prejudice was exacerbated by respondents' arguments to the jury emphasizing the result of the jury's determination. We do not agree that the jury was prejudiced by the instruction.

---

den of establishing by a preponderance of the evidence all of the facts necessary to prove the following issues:

"...

"[A]nd (two) the date of plaintiff's discovery of the negligence alleged in its complaint...."

[9]The court instructed the jury as follows: "The issue for you to determine is whether or not any possible cause of action which plaintiff corporation might have against defendants based on alleged negligence by defendants in their performing accounting services for plaintiff is barred by the statute of limitations. In this case, plaintiff corporation would be barred from pressing any claim it might have against defendants for any such alleged negligence in the providing of accounting services, if the cause of action based on such negligence accrued before September 19th, 1973."

There is no reported case in this state which deals with this contention, but it is "the generally accepted view that error in informing the jury as to the effect their answers to special interrogatories or special issues may have on the ultimate judgment in the case is of prejudicial or reversible status." (Annot. (1963) 90 A.L.R.2d 1040, 1041.) However, there is a recognized exception to this rule that "[i]t is not error to instruct a jury as to matters that they necessarily became acquainted with during the course of the trial." (*Id.*, at p. 1052.)

The record reveals that before being impaneled, appellants' counsel thoroughly explained the statute of limitations *and its effect* at least seven times to seven different jurors in order to ascertain whether they would be prejudiced. Appellants' counsel also referred to the statute of limitations at least 10 different times in his closing argument.

Although we agree that the trial court should not have instructed the jury that it was their duty to determine whether respondents' action was barred by the statute of limitations, thereby informing them of the legal effect of their special verdicts, under the circumstances of this case the giving of the additional instruction was clearly not prejudicial error since it is apparent that the jury knew from other sources just what the trial court told them. (See e.g., *Wright v. Covey* (1961) 233 Ark. 798 [349 S.W.2d 344, 90 A.L.R.2d 1033]; *Texas Employers Ins. Ass'n v. Arnold* (Tex.Civ.App. 1937) 105 S.W.2d 686; *Swiergul v. Suamico* (1931) 204 Wis. 114 [235 N.W. 548].) Moreover, we believe that any intelligent juror would know the effect of their verdict without being so informed by the court. The error, if any, was harmless. (Cal. Const., art. VI, § 13; *Tupman v. Haberkern* (1929) 208 Cal. 256, 263 [280 P. 970].)

C

 Appellants submit that the instruction given on the effect of a fiduciary relationship on respondents' exercise of diligence in discovering appellants' negligence was erroneous and likely to mislead the jury to believe that respondents were under no duty to exercise reasonable diligence to discover the alleged negligent acts.[10] (*Bedolla v. Logan & Frazer, supra*, 52 Cal.App.3d 118.) We cannot agree.

---

[10]The instruction at issue is as follows: "In the presence of a fiduciary relationship, the usual duty of diligence to discover facts giving rise to a cause of action does not exist. Since a fiduciary has a duty to make a full disclosure of the facts which might

The limitations period for professional negligence begins to run when the negligence is discovered or with reasonable diligence could have been discovered. (*Moonie* v. *Lynch, supra*, 256 Cal.App.2d 361; see *United States Liab. Ins. Co.* v. *Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 596 [83 Cal.Rptr. 418, 463 P.2d 770]; *Bedolla* v. *Logan & Frazer, supra*, 52 Cal.App.3d 118, 130-131.) In discussing the duty of diligence the Supreme Court in *Bennett* v. *Hibernia Bank* (1956) 47 Cal.2d 540 [305 P.2d 20], stated that "a fiduciary has a duty to make a full and fair disclosure of all facts which materially affect the rights and interest of the parties, and, where a fiduciary relationship exists, facts which would ordinarily require investigation may not excite suspicion." (*Id.*, at pp. 559-560.) In effect, the *same* degree of diligence is not required where a fiduciary relationship exists between the parties at the time the alleged acts of negligence occur. (Cf. *Hobart* v. *Hobart Estate Co.* (1945) 26 Cal.2d 412, 440-442 [159 P.2d 958]; *United States Liab. Co., supra*, 1 Cal.3d at p. 598.) The plaintiff is only required to establish facts sufficient to show that he made an actual discovery of hitherto unknown information within two years before the filing of the action in order to satisfy the duty of diligence and to thereby come within the limitations period. (Cf. *Bennett, supra*, 47 Cal.2d at p. 563; *Bedolla, supra*, 52 Cal.App.3d at p. 131; see *Hobart, supra*, 26 Cal.2d at p. 442.) However, plaintiff does have a duty to investigate even where a fiduciary relationship exists when "he has notice of facts sufficient to arouse the suspicions of a reasonable man." (*Bennett, supra*, 47 Cal.2d at p. 563; *Bedolla, supra*, 52 Cal.App.3d at p. 131; see *Hobart, supra*, 26 Cal.2d at p. 442.) If such facts actually do come to his attention he may not sit idly by for at that point the statute of limitations begins to run. (*Ibid.*)

The instruction given by the trial judge in this case on the duty of diligence where a fiduciary relationship exists was in our view entirely consistent with prevailing authority. The thrust of the instruction is to the effect that the duty of diligence where a fiduciary relationship exists is not the *usual* duty to investigate required of plaintiffs where no fiduciary relationship exists. Moreover, we note that just prior to the charge at issue the court gave complete and accurate instructions

---

materially affect the rights of the parties, the party to whom the fiduciary duty is owed is entitled to rely on the fiduciary making a full disclosure, and cannot be penalized by failure to investigate circumstances which, in the absence of a fiduciary relationship, might cause a reasonable man to investigate."

on the duty of diligence.[11] In particular, the court instructed that the statute of limitations would begin to run when "plaintiff has discovered, or through the use of reasonable diligence should have discovered, the negligent act causing the injury"; that actual notice of facts indicating negligence would cause the statute of limitations to run; and that in a fiduciary relationship a plaintiff is not charged with constructive notice as to those facts concealed from him by the fiduciary. We are satisfied that, read as a whole, the instructions were correct (*Little* v. *Stuyvesant Life Ins. Co.* (1977) 67 Cal.App.3d 451, 464 [136 Cal.Rptr. 653]) and that the jury was not likely to have been misled. (*LeMons* v. *Regents of University of California, supra,* 21 Cal.3d 869, 876.)

### D

Appellants next argue that their "statute of limitations defense was prejudiced by the trial court's tautological misdefinition for the jury of the word 'appreciable.'" After the jurors retired for deliberation they requested the court to define "appreciable" as used in special verdict question No. 1. Appellants urged, for the record, that "the definition of 'appreciable' be any harm that would support damages above nominal." The court rejoined: "This instruction—although you prefer that one, you have no objection to this one?" Appellants' counsel said "No, I guess not." The court then instructed the jury that "'Appreciable harm' means actual harm of a sufficient magnitude to cause a reasonable man under the same or similar circumstances to pursue his legal remedies." Now appellants contend that "appreciable" means noticeable or perceptible and that the court's definition may have misled the jury into finding that no appreciable and actual damage occurred before September 19, 1973, because the damage was not great enough to cause a reasonable person to undertake a lawsuit.

As respondents correctly note, any objection to the court's definition of the term "appreciable" has been waived by appellants' acquiescence

---

[11]See, for example, the following charges: "The statute of limitations, as to acts of professional malpractice, such as malpractice of an accountant, does not commence to run until plaintiff has discovered, or through the use of reasonable diligence should have discovered, the negligent act causing the injury.

"Notice may be actual or constructive. Notice is actual which consists of express information of a fact or constructive which is imputed by law. Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact has constructive notice of the fact itself in all cases in which by prosecuting such inquiry he might have learned such fact. A party to whom a fiduciary duty is owed is not charged with constructive notice of those material facts which are concealed from him by the fiduciary."

in the court's definition. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 273, pp. 4261-4262; see *Hill* v. *Estate of Westbrook* (1952) 39 Cal.2d 458, 461 [247 P.2d 19]; *Buchanan* v. *Nye* (1954) 128 Cal.App. 2d 582, 587 [275 P.2d 767].) The cases cited by appellants in their reply brief do not dictate a contrary result. (*Warner Constr. Corp.* v. *City of Los Angeles* (1970) 2 Cal.3d 285, 299, fn. 17 [85 Cal.Rptr. 444, 466 P.2d 996]; *Huebotter* v. *Follett* (1946) 27 Cal.2d 765, 769-770 [167 P.2d 193]; *Richardson* v. *Employers' Liab. Assur. Corp.* (1972) 25 Cal.App.3d 232, 241 [102 Cal.Rptr. 547]; *Masterson* v. *Pig'n Whistle Corp.* (1958) 161 Cal.App.2d 323, 336 [326 P.2d 918].) In all of them the party alleging error had strenuously made his objection and then acted defensively to lessen the impact of the error. No waiver can be predicated on this course of action. (See also 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 275, pp. 4263-4264.) Here appellants did not formally make an objection except to offer an alternative definition, and they ultimately and expressly stated that they had no objection to the court's definition. The error was thus waived.[12]

## IV

■ Appellants assert that questions Nos. 2 and 3 of the special verdict were so imprecise that the jury never determined facts sufficient for the trial court to rule on the statute of limitations defense. Respondents again concede the imprecision but assert that the error was not only waived but that it was harmless as well.

Special verdict question No. 2 asked: "Did the plaintiff discover before September 19th, 1973, the alleged negligence of defendants *and* the first appreciable and actual harm resulting from said negligence?" (Italics added.) Question No. 3 asked that in the event the jury's answer to question No. 2 was "no," "Should the plaintiff through the use of reasonable diligence have discovered before September 19th, 1973, the alleged negligence of defendants *and* the first appreciable and actual harm resulting from said negligence?" (Italics added.)

Appellants aver that "[t]hese interrogatories ask the jury to determine not only whether Respondent discovered or should have discovered

---

[12]Also note that appellants' counsel essentially concedes that "[T]his definition thus added nothing to the jury's understanding of the term." As such, the definition could not mislead the jury. Finally, appellants' definition of "appreciable" urged below was entirely different from the one they urge on appeal.

the alleged negligence of Appellant prior to September 19, 1973, but whether Respondent also discovered or should have discovered the harm resulting from the alleged negligence prior to that date." Such a requirement is contrary to law in that if a plaintiff knows of the negligent act and damages have actually been suffered, it makes no difference whether the plaintiff has discovered the damage. We agree with appellants that the law does not require discovery of damage in order for the cause of action to accrue and to thereby trigger the running of the statute of limitations. (See *Budd* v. *Nixen, supra*, 6 Cal.3d 195; *Moonie* v. *Lynch, supra*, 256 Cal.App.2d 361, 365-366.) However, respondents correctly note that where the record is devoid of any showing that appellants objected to the special verdict questions, any inherent error therein is waived. (*Brokaw* v. *Black-Foxe Military Institute* (1951) 37 Cal.2d 274, 280 [231 P.2d 816]; *Water Co.* v. *Richardson* (1887) 72 Cal. 598 [14 P. 379]; *Babcock* v. *Omansky* (1973) 31 Cal.App.3d 625, 630 [107 Cal.Rptr. 512].) As no objection appears, the error is waived.

Likewise, respondents are correct that no prejudice arose from the improperly worded questions. Appellants state that the jury may have found that respondents discovered the alleged negligence prior to September 19, 1973, but did not discover appreciable damage until later. However, even if the jury found that respondents discovered the negligent acts prior to September 19, 1973, the cause of action did not accrue until after that date since they also found that no damages had occurred before then. (*Budd* v. *Nixen, supra*, 6 Cal.3d 195, 203; see discussion *ante*, at pp. 852-853.) Hence the limitations period could not begin to run until after September 19, 1973, and again the date respondents discovered the negligent acts was moot. We conclude that, in addition to the error being waived, the defectively worded special verdict questions did not deprive appellants of a fair hearing on the issue of discovery of the negligent acts. (*Pearson Ford Co.* v. *Ford Motor Co.* (1969) 273 Cal.App.2d 269, 277 [78 Cal.Rptr. 279].)

The judgment is affirmed.[13]

---

[13]We note that respondents filed a notice of cross-appeal contesting the portion of the judgment reducing respondents' recovery from the total amount of damages found to have been sustained due to appellants' conduct by 80 percent. Respondents also filed an amended cross-appeal seeking modification of a clerical error in the amount of the judgment. However, respondents failed to address themselves in their brief to any of the issues raised in their notice of cross-appeal and amended notice of cross-appeal. Further, respondents did not designate the reporter's transcript of the full trial on the merits thereby precluding effective review of the alleged errors in the damages' award.

The party asserting errors at trial has the burden to properly present his case and to

Parties are to bear own costs.

Scott, J., and Barry-Deal, J., concurred.

---

designate an adequate record. (See *Rossiter* v. *Benoit* (1979) 88 Cal.App.3d 706, 712 [152 Cal.Rptr. 65]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 373, p. 4345.) Accordingly, a point not presented in the appealing party's brief is deemed to have been abandoned or waived. (*Leming* v. *Oilfields Trucking Co.* (1955) 44 Cal.2d 343, 356 [282 P.2d 23, 51 A.L.R.2d 107]; *Title G. & T. Co.* v. *Fraternal Finance Co.* (1934) 220 Cal. 362, 363 [30 P.2d 515]; *Henderson* v. *Security Nat. Bank* (1977) 72 Cal.App.3d 764, 769 [140 Cal.Rptr. 388].) The alleged errors raised in respondents' notice of cross-appeal and amended notice of cross-appeal are therefore waived. As to the clerical error in the judgment, respondents may obtain relief from the trial court pursuant to Code of Civil Procedure section 473. (See 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, §§ 66-67, pp. 3228-3230; *Zisk* v. *City of Roseville* (1976) 56 Cal. App.3d 41, 47 [127 Cal.Rptr. 896]; *Russell* v. *Superior Court* (1967) 252 Cal.App.2d 1, 8 [59 Cal.Rptr. 891].)