Helen **DAVIES**, Appellant,

v.

**CARNATION COMPANY**, Appellee.

No. 19501.

United States Court of Appeals
Ninth Circuit.

Nov. 5, 1965.

Rehearing Denied Dec. 10, 1965.

Frederic B. Schramm, Cleveland, Ohio, Elwood S. Kendrick, Los Angeles, Cal., Schramm, Kramer & Sturges, Cleveland, Ohio, for appellant.

Richard R. Carr, James R. Baird, Jr., William H. Birnie, Los Angeles, Cal., for appellee Carnation Co.

Before JERTBERG, MERRILL and ELY, Circuit Judges.

ELY, Circuit Judge.

Appellant instituted her suit against a number of defendants, and one of them, Carnation Company, obtained the granting of a motion for summary judgment in its favor. The facts are found in numerous affidavits and other documents offered in support of and in opposition to the motion, as well as in deposition testimony given by the appellant.

A process for manufacturing condensed milk in dry form had been developed by D. D. Peebles, president of Western Condensing Company. An account of his work had appeared in a publication, and Carnation Company had obtained rights to distribute the product under the name, Carnation Instant Milk.

On November 12, 1954, appellant, claiming to be "a researcher in the food industry, working as an independent consultant" wrote an unsolicited letter to Mr. Peebles. She complimented Mr. Peebles for his accomplishment as reported in the publication, expressed an interest in testing the product in her "home test kitchen", and asked if his "office might obtain information from the Carnation Company the names of stores where we might obtain 1–2 lbs.?" An assistant to Mr. Peebles replied that appellant's letter was being referred to Carnation Company. Approximately two months thereafter, appellant wrote another letter to Mr. Peebles. In this communication, she wrote that, in testing Carnation Instant Milk, she had "found a value and property therein, which is both unexpected and extremely important from the marketing and promotional aspect." She inquired as to whether she should discuss the matter with Mr. Peebles or "contact the Carnation Company directly." She concluded, "The marketing ideas we develop we assign to an interested company, in consideration of a fee or a retainer arrangement." The receipt of this letter was acknowledged by Mr. Peebles' assistant, who informed appellant that her letter was being referred to Carnation Company. Thereafter, on February 10, 1955, the general manager of Carnation's commercial sales division wrote to appellant and advised her of his plan to visit New York City, where appellant's office was located, early in the following month. He expressed interest in meeting with her at her convenience. This brought from appellant a written reply, dated February 16, 1955, in which appellant offered the following:

"(a) I am ready to make written disclosure to you which if you accept or use in connection with Patent protection, or any other purpose, you would compensate me the sum of $3500. And, I am also ready to serve in a consulting capacity to your firm, or advertising agency, for an amount to be discusssed.

"(b) If you do not use the subject of my disclosure, you will not be obligated to me."

The offers were repeated in a letter dated March 15, 1955 and which was apparently handed to Carnation's manager at a personal meeting with appellant in New York at about the same time. At the lower left of this letter is written "Accepted by:" followed by a signature line over the typing, "Paul A. Taylor, General Manager" and a blank "Date" line. Mr. Taylor did not sign the letter. On April 7, 1955, appellant wrote Mr. Taylor asking if he had "yet had the meeting contemplated with your chief executives and patent attorney to reconsider and evaluate the importance of my research findings, marketing and patent-process material which we discussed three weeks ago?" Thereafter, in a letter dated April 18, 1955, Mr. R. D. Kummel of Carnation's corporate department wrote a letter which appears in the footnote below.[1]

[1]. "Helen Davies and Associates
140 West 57th Street
New York 19, New York
Dear Miss Davies:
Your letter of April 7, 1955, directed to the attention of Paul A. Taylor, as well as the correspondence between you and Mr. Taylor relative to your research findings, marketing and patent process material for Carnation Instant, has been turned over to the undersigned. After studying the resume of your experience

In it, appellant was informed that because of certain considerations, Carnation had adopted a policy not to "consider any suggestion or idea of this type unless the person wishing to submit the idea or suggestion first signs a release form of the type submitted to you by Mr. Taylor." Mr. Taylor had submitted such "release form" to appellant during the meeting in New York, but appellant did not sign the same. After receiving Mr. Kummel's letter, the appellant replied, protesting that the nature of her work demanded an arrangement opposed to Carnation's general policy as expressed by Mr. Kummel. To this letter, Mr. Kummel replied, stating, in effect, that the policy was inflexible and that there might arise a further opportunity for discussion. No such opportunity presented itself in the following two and one-half months, and in a letter dated July 27, 1955, addressed to Mr. Kummel, appellant, mentioning the possibility of a meeting in the first or second following month, concluded, "Instead of having further initial conversations at that time I thought it best for all concerned, if a final decision can be made then. To facilitate your evaluating the project and its timeliness with respect to your competition and to determine your position, I am enclosing a complete disclosure, as I have faith and trust in the fair dealings of your company," The enclosed "disclosure" is a document containing appellant's report of her experiments with different brands of dry milk products. It also contains references to a number of publications treating generally of nutrition and appellant's recommendation as to an approach by which Carnation's advertisement of its product could be improved. The only unique idea which the appellant claims to have included within her "disclosure" is that of advertising and promoting the "pouring or sprinkling" of "dry milk into warm or hot liquids, or food mixtures, during the usual cooking processes." Promptly, in a letter dated August 19, 1955, Mr. Kummel informed appellant that Carnation had "no interest in acquiring whatever rights you may have to these ideas." He pointed out, in effect, that while Carnation had not chosen to advertise the use of its products with heated liquids, the company had conducted tests and was familiar with the product's properties for such use.

Approximately eight years later, on May 14, 1963, appellant instituted her suit in the court below. Her complaint includes four counts. In the first, she alleges that Carnation failed to return the report which she voluntarily forwarded on July 27, 1955 and thereby wrongfully

in the food industry, we can safely assume that you are aware of the dangers involved in giving consideration to unpatented and uncopyrighted ideas and suggestions which are submitted for our consideration and which are unsolicited by us. Because of this, we have been forced to adopt a policy that we will not consider any suggestion or idea of this type unless the person wishing to submit the idea or suggestion first signs a release form of the type submitted to you by Mr. Taylor. We also will not agree to pay any specified sum in advance for any suggestion submitted.

We realize, of course, that a program of this type undoubtedly causes many people to refuse to submit their idea or suggestion to us for our consideration. While we sincerely regret this, we have been forced, because of legal considerations to adopt this rather harsh procedure. As I believe Mr. Taylor pointed out to you, we would be most happy to give consideration to your findings but only upon the conditions expressed in the release. We will not and cannot agree to pay any advance in the sum of $3500.00 if we find your research findings to be of use to us. I might add that Carnation Company has always compensated people for any suggestion submitted which was new to the company and which was of value to the company. The amount of compensation, however, as expressed in our release, rests solely in our discretion and would naturally be based upon the value of the idea or suggestion which was submitted. We have no objection to your taking this matter up further with Mr. Peebles. We might add, however, that Mr. Peebles always refers matters of this type to this department.

Very truly yours,
Corporate Department
RDKummel:jph
cc—P.A.Taylor"

converted the same to its own use and benefit. In the second count, she alleges that there was an implied promise that she should be paid for the material submitted in the event Carnation made use of the material. In the third, she alleges, in effect, that the circumstances disclose tortious, fraudulent conduct, and in the fourth, she undertakes to state a claim under the provisions of federal statutes proscribing certain trust and competitive practices. 15 U.S.C. §§ 1, 2, 14, 15, 18, and 19.

The judgment of the District Court must be affirmed. The claim asserted in count I was clearly barred by lapse of time. It alleges tortious conversion, and § 338, subd. 3 of California's Code of Civil Procedure provides that an action for "taking or detaining * * goods or chattels" must be commenced within a period of three years from the accrual of the claim. Appellant insists that her alleged claim for conversion did not arise until May 8, 1963, when her attorney forwarded to Carnation a demand that the report be returned. We do not agree. Had the report been submitted to Carnation at the latter's request and the appellant advised of its rejection, as she was, Carnation may have had a legal obligation to return the report with the rejection. As we have seen, however, appellant, after having been clearly informed by Carnation that it did not wish to receive her report upon conditions which placed it under obligation, chose freely, voluntarily, and gratuitously to submit the document to Carnation. Under these circumstances, if she believed that Carnation became the mere bailee of the report, it was her obligation to request its return within a reasonable time which, most assuredly, would not have extended beyond a date three years in advance of her institution of her suit. Under the circumstances here, we hold that the report was given to Carnation and became its property. Moreover, it was shown that appellant retained a copy of the report, and this negates the existence of actionable damage from her surrender of the possession of the original report alone.

Furthermore, the District Court was correct in its conclusion that the contents of the report revealed no substantial uniqueness or novelty to Carnation. The record reveals that Mr. Peebles, during the development of his process, tried and tested the product in warm and heated mixtures and that, as a matter of fact, the label affixed to the product before its distribution was undertaken by Carnation recommended "To hot and cold beverages, soups, etc., add PEEBLES INSTANT MILK to taste. In cooking and baking, for extra nourishment, extra richness, simply use more dry PEEBLES INSTANT MILK." A mere idea without novelty is not a property right to which one may claim exclusive ownership. Boop v. Ford Motor Co., 278 F.2d 197 (7th Cir. 1960); Puente v. President & Fellows of Harvard College, 248 F.2d 799 (1st Cir. 1957), cert. denied, 356 U.S. 947, 78 S.Ct. 785, 2 L.Ed.2d 822 (1958). This most certainly is true when the one against whom the right is asserted has already entertained the idea and shared it with the general public. The fact that Carnation, at a time subsequent to its receipt of appellant's report, commenced to advertise the product for use with warm and heated liquids, as Peebles had done before, as Carnation had not done, and as appellant had recommended, did not create in appellant a property right which she had not previously enjoyed.

The foregoing considerations also serve as answers to appellant's contentions as made in counts II and III of her complaint. See also Desny v. Wilder, 46 Cal.2d 715, 738, 739, 299 P.2d 257 (1956).

Appellant's claim, under federal antitrust law, of a right to recover for Carnation's alleged conspiracy with others to interfere with the use of her services by defendant's competitors is baseless. Violations of the prohibitions of the antitrust laws are subject to complaint by "any person who shall be injured in his business or property" by reason of such violations. 15 U.S.C. § 15. Count

IV of the complaint expressly incorporates the facts specified in support of counts I, II, and III. The allegations, coupled with the facts and their legal effect, make it clear that there can be no support for a conclusion that if Carnation and others did conspire in the alleged manner, appellant was thereby "injured" in her "business or property."

Affirmed.