Filed 7/31/14  Leonard v. Waterloo CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ELLIOTT LEONARD,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>PETER WATERLOO,<br><br>    Defendant and Appellant. | G048661<br><br>(Super. Ct. No. 30-2010-00416036)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, John C. Gastelum, Judge.  Affirmed.

Thomas Vogele & Associates, Thomas A. Vogele and Timothy M. Kowal for Defendant and Appellant.

Thomas | Lucas and Timothy D. Lucas for Plaintiff and Respondent.

## INTRODUCTION

The primary issue in this appeal is whether respondent Elliott Leonard waited too long to sue appellant Peter Waterloo to recover 14 pieces of art. Waterloo asserted these art works were gifts, given to him over several years with no expectation of their return. Leonard insisted he had lent the works to Waterloo, who then refused to return them on demand.

After a two-day bench trial, the court found in Leonard's favor, largely on credibility grounds. It held the art works were loans, not gifts, and ordered Waterloo to return them, or, if they were no longer in his possession, to pay Leonard their cash value.

Waterloo appeals from the judgment on the ground the limitations period had expired on Leonard's claims to have the property returned. He points to allegations in the second amended complaint as judicial admissions establishing a trigger for the limitations period that, according to him, ran out before Leonard filed suit. He also advances the related argument that Leonard waited too long to make his demand for return of the art pieces.

We affirm the judgment. The court correctly determined the limitations period did not start to run until Leonard demanded the return of the art works and Waterloo refused to do so or otherwise acted inconsistently with Leonard's right of possession. Until that time, Waterloo had Leonard's permission to keep the art, and therefore no cause of action arose. Because Leonard filed suit promptly after his demand and Waterloo's refusal, the action was timely.

## FACTS

Leonard and his life partner, Roger Litz, met Waterloo as a young man in New York during the early 1980s. Waterloo was the son of Litz's first cousin. Although Leonard and Litz socialized somewhat with Waterloo at the time, they were of an older generation and at a different stage of life. They were very much involved in the art

2

scene and in art collecting, while he was, as might be expected of a man in his twenties, more interested in a social life.

Leonard and Litz persuaded Waterloo, a young stockbroker, to move to New York, and during this time, Leonard lent Waterloo several of pieces of art. The relationship between the older men and Waterloo eventually soured, and Leonard sought the return of his loans. Waterloo returned the pieces without any demur, and the couple lost touch with him for about 10 years.

In 1997, Leonard and Litz moved to Newport Beach. Unbeknownst to them, Waterloo had moved to San Francisco and was working as a stockbroker at Morgan Stanley. They reconnected in 1998 or 1999 and visited each other on occasion for several years.

During this period, the art works that became the subject of the lawsuit migrated from Leonard's possession to Waterloo's. Leonard testified the artworks were lent to Waterloo to enable him to "live" with art and thus to become more knowledgeable and discerning about it. Waterloo testified the pieces were gifts, given to him by Leonard to mark various important events, such as the reestablishment of their relationship.

Once again, as it had in New York, the relationship between the older couple and Waterloo deteriorated. Leonard testified he had phoned Waterloo sometime in 2009 to talk about getting his art back, but Waterloo had claimed to be too busy to talk to him. He called again a few times in early 2010, but Waterloo again put him off. Finally, in June 2010, Leonard e-mailed Waterloo asking about the return of the art. In response, a few days later, Waterloo stated he regarded the art as a gift. Leonard then consulted an attorney who sent Waterloo a formal demand letter in August 2010.

Leonard sued Waterloo in October 2010 for possession of personal property and, in the second amended complaint, for conversion. The original complaint and the first amended complaint were verified; the second amended complaint, the operative pleading, was not. In the amended versions, Leonard alleged Waterloo had requested the

3

loan of several art pieces to display during some events at his new home in 2006, and Leonard agreed to the loan "with the understanding that Waterloo was to return the art works no later than the next year." Leonard also alleged that he asked for the return of the artworks beginning in late 2007, but Waterloo kept making excuses for not returning them and ultimately refused to take his calls.

The case was tried to the court over two days in October 2012. Leonard, Litz, and Waterloo testified, as did Waterloo's partner, Jon Taylor. The parties submitted closing arguments by way of briefs, and the court issued a proposed statement of decision in January 2013. Waterloo objected to the proposed statement. The court issued a final statement of decision, which tracked the proposed statement with some minor adjustments, in March 2013.

The court found in favor of Leonard: the art works were lent to Waterloo, not given to him. The court based its findings mainly on credibility. It believed the testimony of Leonard and Litz and did not credit the testimony of Waterloo and Taylor. Judgment was entered in April 2013, ordering Waterloo to return 14 specified pieces of art. If Waterloo no longer had a listed piece in his possession, he was ordered to pay Leonard an amount in damages for each missing piece. A revised judgment was entered in August 2013.

## DISCUSSION

Waterloo has identified two issues on appeal. First, he asserts the limitations period for the return of the art had expired for several reasons, so the causes of action were untimely. Second, he asserts the statement of decision is incomplete because the trial court did not make findings on all material facts. We discuss each assertion in turn and reject both.

4

## I.   Judicial Admission and Limitations Period

The second amended complaint stated a cause of action for conversion. The elements of this cause of action are (1) the plaintiff's ownership of or right to possess personal property, (2) the defendant's wrongful interference with this right, and (3) damages.[1] (*Los Angeles Federal Credit Union v. Madatyan* (2012) 209 Cal.App.4th 1383, 1387; see also *Oakdale Village Group v. Fong* (1996) 43 Cal.App.4th 539, 544.)

The limitations period for a conversion cause of action is three years. (Code Civ. Proc., § 338, subd. (c)(1).)  The question before the trial court was when the cause of action accrued and the three-year period commenced.  Because the expiration of a limitations period is an affirmative defense, Waterloo, as the party asserting it, had the burden of proving Leonard's claim was time-barred.  (See *Ladd v. Warner Bros. Entertainment, Inc.* (2010) 184 Cal.App.4th 1298, 1310.)

"The general rule is that the statute of limitations does not run against a bailor and owner of the property and in favor of the bailee claiming to hold adversely to the owner until such adverse claim is brought to the knowledge of the bailor.  [Citation.]  So long as the bailee holds in recognition of the bailor's right, the statute does not run.  [Citation.]  It does not commence to run until the illegal exercise of dominion over the property.  [Citation.]  When personal property is legally taken the statute of limitations is tolled until the owner demands and is refused possession of it.  [Citation.]  [¶]  Where the illegal taking consists of a refusal by the party in possession to surrender the property on demand, the period of limitations commences to run at the time of the refusal.  [Citations.]  [¶]  '"If the original taking be wrongful, the bar of the statute runs from the time of the unlawful taking; but where the original taking is lawful, the statute is not set in motion until the return of the property has been demanded and refused, or until a

---

[1]   The complaint also stated a cause of action for possession of personal property, but the issues on appeal are specific to conversion.  We therefore focus our discussion on this cause of action.

repudiation of the owner's title which is clearly and unequivocally brought home to him, is made." [Citations.]'" (*Niiya v. Goto* (1960) 181 Cal.App.2d 682, 688 (*Niiya*); see also *Bufano v. San Francisco* (1965) 233 Cal.App.2d 61, 70 [limitations period on conversion of sculptures did not start until city refused sculptor's request to return them, notwithstanding city's possession of sculptures for over 20 years].)

Waterloo argues that two allegations in the pleadings, one of which was verified, operate as judicial admissions barring Leonard's conversion cause of action. One of the allegations was that Leonard lent the art to Waterloo in 2006 "with the understanding that Waterloo was to return the art works no later than the next year." The other was "[b]eginning in late 2007, [Leonard] told Waterloo that he wanted the artworks back. Waterloo kept making excuses to [Leonard] for not returning [Leonard's] artworks. Then during the latter part of 2009 and early 2010, Waterloo stopped taking [Leonard's] calls altogether."

"A judicial admission (by affirmative allegation in a pleading) is a conclusive concession of the truth of the matter admitted." (*Kirby* v. *Albert D. Seeno Construction Co.* (1992) 11 Cal.App.4th 1059, 1066, fn. 4.) "'It is a waiver of proof of a fact by conceding its truth, and it has the effect of removing the matter from the issues.'" (*Valerio v. Andrew Youngquist Construction* (2002) 103 Cal.App.4th 1264, 1271, italics omitted.) A judicial admission "is not treated procedurally as evidence; the particular pleading or allegation is not formally offered in evidence but may nevertheless be relied upon and treated in argument as part of the case." (1 Witkin, Cal. Evidence (4th ed. 2000) Hearsay, § 97, p. 799.)

The court in *Electronic Equipment Express, Inc. v. Donald H. Seiler & Co.* (1981) 122 Cal.App.3d 834 (*Electronic*), explained the difference between probative and dispositive admissions. The court used *Hall v. United States* (N.D.Cal.1970) 314 F.Supp. 1135, to illustrate a dispositive admission. In *Hall*, a medical malpractice case, the plaintiff alleged that she had been tested for infertility in May 1964, in September 1964,

6

and in the summer of 1965, terminating in September 1965.  Following these tests, the plaintiff alleged, she knew she was permanently sterile and that the defendant doctor's treatment was the cause of her sterility.  These allegations conclusively established when the plaintiff knew the facts upon which she based her malpractice claim.  (*Electronic, supra,* 122 Cal.App.3d at pp. 850-851.)  By contrast, in *Electronic* itself, an accounting malpractice case, the plaintiff alleged that the company president had discovered in August 1973 that the financial statements prepared by the defendant accountants were inaccurate.  (*Id.* at pp. 849-850.)  This was not, however, a dispositive admission, because it said nothing about the president's knowledge of the accountants' negligence as a cause of the inaccuracies.  Although the allegation was conclusive as to when the president discovered the falsity of the financial statements, the jury could still hear evidence about when the president learned of the accountants' negligence.  (*Id.* at p. 851.)

In this case, the allegations of the amended complaints are not dispositive admissions conclusively establishing the running of the limitations period.  The first allegation established only that Leonard expected Waterloo to return some of the art sometime in 2007 – exactly *when* left undetermined.[2]  Leonard did *not* allege that he also told Waterloo, "and if you don't return the art before the end of 2007, I am going to assume you don't intend to return it at all but are keeping it for yourself."  Likewise, the allegation that Leonard told Waterloo in late 2007 that he wanted the art back established when Leonard began agitating for its return.  It did not establish when Waterloo refused to return it.  In fact, the other allegations suggested that Waterloo strung Leonard along with excuses for several years instead of flat-out refusing to return the pieces.

Waterloo focuses on when the demand was made, but the act that sets the clock to ticking is not the demand but the refusal.  (See *Coy v. County of Los Angeles* (1991) 235 Cal App.3d 1077, 1088.)  There was no evidence that Waterloo informed

_____

[2]      If Leonard expected the art to be returned by, say, December 2007, a suit filed in October 2010 would be timely.

7

Leonard before 2010 that he would not return the art or that he acted in any way inconsistently with Leonard's ownership rights. Until he did so, Waterloo had Leonard's permission to retain the art works, and no cause of action for conversion had accrued.

Waterloo argues that a demand for return of the property is not necessary to trigger the limitations period, citing several cases of venerable age, including *Coy v. E.F. Hutton & Co.* (1941) 44 Cal.App.2d 386 (*Coy*), *Metzler v. Foster Holding Co.* (1936) 5 Cal.2d 278 (*Metzler*), and *First National Bk. v. Thompson* (1943) 60 Cal.App.2d 79 (*Thompson*). These cases follow the rule that when a conversion is complete, a demand for return of the property will not extend the limitations period. In *Coy*, for example, the brokerage house had sold the stock that was the subject of the conversion cause of action. The court held that the "conversion is complete at the time of the wrongful disposal of the property, and the statute starts to run from that time." (*Coy, supra,* 44 Cal.App.2d at p. 390.) Similarly, in *Thompson*, the bank's gas shovel was sold by the person who was buying it on time and who had it in his possession, but who had no right to sell it. The bank was unable to recover it from the innocent buyers because the sale had taken place over three years before the bank sued to recover the shovel. (*Thompson, supra,* 60 Cal.App.2d at pp. 82-83.) In *Metzler*, the converted property was hay and stock, all of which had been consumed or sold over three years before suit was filed. (*Metzler, supra,* 5 Cal.2d at p. 282.)[3]

In this case, the conversion was not "complete," because Waterloo had not disposed of the art before Leonard filed suit. Waterloo had not yet acted in a manner inconsistent with Leonard's interests.[4] "In the context of a bailment . . ., if the bailee does

---

[3] "The rule is that where there has been an actual conversion, a demand upon the defendant before the institution of the action of trover is not necessary. For, since demand and refusal do not of themselves constitute conversion but are only evidence from which conversion in certain cases may be found [citation], the conversion may be established by proof of other acts on the part of the defendant, such, for instance, as selling and delivering the property to some third person in defiance of the rights of the true owner." (*Mier v. Southern California Ice Co.* (1922) 56 Cal.App. 512, 518.)

[4] If in fact Waterloo did dispose of some of the pieces, as may be the case given the court's alternative holding on damages, he did not establish that he did so more than three years before Leonard filed suit.

8

nothing inconsistent with the bailor's right of ownership or in repudiation of that right, the bailor's cause of action for the return of the property does not accrue until the bailee *refuses a demand* to surrender the property." (*Naftzger v. American Numismatic Society* (1996) 42 Cal.App.4th 421, 429.) Waterloo did nothing inconsistent with Leonard's right of ownership until June 19, 2010, when, in response to an e-mail from Leonard discussing the return of the art works, he stated that he regarded the pieces as gifts.

Waterloo also argues Leonard waited too long to make his demand.[5] If we understand this argument correctly, he is asserting that Leonard should have demanded the art be returned at the moment it was lent, starting in 1999, and that "[w]aiting eleven (11) years is not reasonable." According to Waterloo, again assuming we have understood him correctly, Leonard had to demand the return of the pieces within three years of the date they were lent; otherwise it was too late to regain them.

To support this argument, Leonard cites a California state court case dealing with a commercial contract and a Ninth Circuit case dealing with "over-the-transom" unsolicited intellectual property. The state court case dealt with a cause of action for breach of an oral contract, not for conversion. "The general rule is that were demand is necessary to perfect a right of action and no time therefore *is specified in the contract*, the demand must be made within a reasonable time after it can lawfully be made." (*Stafford v. Oil Tool Corp.* (1955) 133 Cal.App.2d 763, 765-766 [italics added].) As the court noted in *Niiya, supra*, this holding has no bearing on the commencement of the limitations period in a conversion action. (*Niiya, supra,* 181 Cal.App.2d at p. 690.)

---

[5] "[A] bailment is the delivery of a thing to another for some special object or purpose, on a contract, express or implied, to conform to the objects or purposes of the delivery which may be as various as the transactions of men." (*H.S. Crocker Co. v. McFaddin* (1957) 148 Cal.App.2d 639, 643.) It is not necessary to decide at this stage whether Leonard was a voluntary depositor (see Civ. Code, § 1814) or a lender for use. (See Civ. Code, § 1884.) At the very least, Waterloo was a gratuitous bailee. (See *Bufano v. San Francisco, supra,* 233 Cal.App.2d at p. 70; Civ. Code, § 1844.) There is ample evidence that lending the art benefited Leonard as well as Waterloo.

Both a voluntary depositor and a lender for use have the right to demand the property's return. (See Civ. Code, §§ 1822, 1894 [demand for return can be made "at any time."].)

9

The Ninth Circuit case, *Davies v. Carnation Co.* (9th Cir. 1965) 352 F.2d 393, is even more insubstantial as support for this argument. The court in *Davies* held that the intellectual property was given to defendant Carnation Co. after it had clearly stated it did not want the property. There was therefore no conversion, because the plaintiff had made a gift of the property to Carnation. The court stated, in clear dictum, that *if* the plaintiff thought Carnation was a bailee of the property, she had to ask to have it returned within a reasonable time, which "most assuredly, would not have extended beyond a date three years in advance of her institution of her suit." (*Id.* at p. 396.) The Ninth Circuit's holding in Carnation's favor, however, was not based on the failure to make a timely demand.

In this case, the trial court stated in the proposed statement of decision that "Waterloo consistently testified at trial that Leonard made no 'definitive' demand for the return of the art until May 2010, well within the limitations period here." It did not resolve the issue of when Leonard should have made his demands or whether he should have asked to have the art returned earlier than he did. In his objections to the proposed statement of decision, Waterloo did not identify this issue as one left unresolved.[6] Waterloo did not bring this omission to the attention of the trial court as required by Code of Civil Procedure section 634, and thus we indulge all intendments and presumptions in favor of the correctness of the judgment on this issue. (See *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133-1134.)

Ample evidence supports the trial court's implied finding that Leonard was not required to demand the return of the art from Waterloo before he did. This was an informal transaction between family members and erstwhile friends. Leonard lent the art to Waterloo so that he could enjoy it and learn from it. There was no abrupt break in the

---

[6] Waterloo objected that (1) "notice, not demand, is the relevant issue. The Proposed [Statement of Decision] does not include any discussion regarding notice." and (2) "the Proposed [Statement of Decision] does not include any discussion regarding Leonard's demand for the return of the art work prior to 2010."

10

relationship after which things turned hostile. There was a gradual decline, spurred on by Leonard's suspicion that his art was not having the desired effect on Waterloo's sensibilities. As Leonard testified, he was not interested in ripping the art work off Waterloo's walls. Under the circumstances, Leonard was not required to demand the return of the art within three years of lending it to Waterloo.

## II.        The Statement of Decision

Code of Civil Procedure section 632 requires a court, upon request after a court trial, to issue a statement of decision "explaining the factual and legal basis for its decision as to each of the principal controverted issues" after it has issued a tentative decision. The section further provides, "The request for a statement of decision shall specify those controverted issues as to which the party is requesting a statement of decision."

In this case, neither party requested a statement of decision. Instead, the court volunteered to produce one and did so in January 2013.[7] Pursuant to California Rules of Court, rule 3.1590(c), the court stated the proposed statement of decision would become the final statement unless either party specified controverted issues or made proposals not covered by the proposed decision. The court used a list of 40 controverted issues filed before trial as a guide, declining to consider those issues that were not outcome determinative.

Waterloo objected to the proposed statement on several grounds, including issues regarding the limitations issue – the "judicial admission" argument, the irrelevance of a demand, and "demands for the return of the art work prior to 2010." The final statement of decision, issued in March 2013, discussed some of the evidence more specifically, but did not differ significantly from the proposed statement.

---

[7]        Between the end of trial in October 2012 and the issuing of the proposed statement of decision in January 2013, each side filed a closing argument brief.

11

On appeal, Waterloo argues that the statement of decision is incomplete, and this incompleteness constitutes reversible error. The only fault he finds with the statement, however, is that "the trial court made no findings regarding when Leonard became aware or should have become aware of his claims."[8]

"In rendering a statement of decision . . ., a trial court is required only to state ultimate rather than evidentiary facts; only when it fails to make findings on a material issue which would fairly disclose the trial court's determination would reversible error result. [Citations.] Even then, if the judgment is otherwise supported, the omission to make such findings is harmless error unless the evidence is sufficient to sustain a finding in the complaining party's favor which would have the effect of countervailing or destroying other findings. [Citation.] A failure to find on an immaterial issue is not error. [Citations.] The trial court need not discuss each question listed in a party's request; all that is required is an explanation of the factual and legal basis for the court's decision regarding the principal controverted issues at trial as are listed in the request. [Citation.]" (*Hellman v. La Cumbre Golf & Country Club* (1992) 6 Cal.App.4th 1224, 1230.) The substantial evidence test still applies to findings of fact – both express and implied – found in the statement. (*SFPP v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 462.)

The trial court found that Leonard's cause of action for conversion did not accrue until he demanded the return of the art works from Waterloo and Waterloo refused the demand, basing its decision on Leonard's credible testimony that Waterloo had his permission to keep the pieces until 2010.[9] Leonard filed suit in October 2010. Thus when Leonard "knew or should have known" he had a claim is immaterial. He did not

---

[8] Waterloo does not claim that anything about the statement is ambiguous or that it fails to resolve any other controverted issue. (See Code Civ. Proc., § 634.) He simply disagrees with the court's resolution of the issues.

[9] Waterloo's deposition testimony, read at trial, supported the court's determination. Waterloo stated at his deposition that the first time he heard anything about Leonard wanting the art back was in May 2010.

12

have a claim at all until sometime in 2010, when he made his demand and was refused. He filed suit promptly, within a few months of Waterloo's repudiation of the loan. The state of his knowledge is irrelevant – his lawsuit was timely filed.

## DISPOSITION

The judgment is affirmed. Respondent is to recover his costs on appeal.

BEDSWORTH, ACTING P. J.

WE CONCUR:

IKOLA, J.

THOMPSON, J.

13